592 So.2d 689 (1991)
Edward HIGHTOWER, Appellant,
v.
The STATE of Florida, Appellee.
No. 91-488.
District Court of Appeal of Florida, Third District.
December 10, 1991.
Bennett H. Brummer, Public Defender, and Robert Kalter, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Marc E. Brandes, Asst. Atty. Gen., for appellee.
Before FERGUSON, LEVY and GERSTEN, JJ.
LEVY, Judge.
Defendant appeals his conviction for Aggravated Assault and Battery, claiming that the prosecutor committed fundamental error by improperly attacking the credibility of defense counsel.
Edward Hightower, the defendant below, approached a female victim outside a grocery store, in an apparent attempt to mug her, and struck the victim in the face. When the victim started to strike back, the defendant allegedly pulled a gun from his pants and pointed it at the victim. The defendant admitted hitting the victim, but denied using a firearm. However, the witnesses at trial testified that they saw the defendant point a gun at the victim. The defendant lived four blocks from the crime scene and was not approached by police until twenty minutes after the incident.
*690 During the State's closing argument, the following comment was made by the prosecutor:
Now, Karen Miller is an excellent attorney. She's appointed to represent Edward Hightower. She's the Assistant Public Defender. She doesn't choose her clients and it's her job and she does a good one to confuse witnesses, to try to put words in witnesses' mouths as she did on her cross examination.
The defendant did not object to the State's closing argument, did not ask for a curative instruction, and did not ask for a mistrial.
The defendant was convicted of both Aggravated Assault as to Count I, and Battery as to Count II, and sentenced to three years in prison as to Count I, with a suspended sentence as to Count II. The defendant appeals.
The appellant contends that the prosecutor's comment implied to the jury that defense counsel was only representing the defendant because she had no choice and was forced to. According to the appellant, this improper attack upon the credibility of defense counsel deprived the defendant of a fair trial, thus constituting fundamental error and warranting reversal. Appellant claims that the error was not harmless because this was a very close case concerning the issue of whether or not a gun was used and it was impossible for the State to establish beyond a reasonable doubt that the comment in question did not affect the jury verdict. We disagree. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
The State argues that the defendant failed to properly object to the statement and move for a mistrial and thus, absent a showing of fundamental error, this issue has not been preserved for appellate review. The State further argues that the statements made during closing argument do not constitute fundamental error. We agree.
The statements did not discuss the defendant, witnesses, or the weapon used in the crime, and did not go to the foundation or merits of the cause of action. It is clear that, in the absence of showing of fundamental error, the convictions and sentences entered below must be affirmed in view of the fact that the error was not preserved in the trial court.
We further hold that, even if the claimed error had been properly preserved in the trial court, the judgment and sentence entered in this case would still have to be affirmed. The evidence presented at trial, relating to the appellant's possession of a firearm, was overwhelming and completely uncontradicted and, therefore, clearly supports the conviction and sentence. Any error committed by the prosecutor in the closing statement was harmless. In reaching this conclusion, we note that three of the State's witnesses, the victim, the victim's daughter, and an eyewitness/neighbor, testified that the defendant possessed a firearm at the time he committed a battery on the victim. The defendant did not testify on his own behalf, and the defense rested at the close of the State's case. The following are excerpts of testimony taken from the State's witnesses during the proceedings below.
ON DIRECT TESTIMONY OF SANDRA KING (VICTIM) 
Page 141: Q: What happened?
A: He pulled the gun from up under his pants and put it to my face. So, I just back, back. He pulled a gun on me and so I'm going home to get my stuff.
Q: Were you scared when he pulled the gun in your face?
A: Yes, I was.
Q: And the kids are still there by your side?
A: Uh-huh.
Q: Let's talk about what that gun looked like. Tell us about the gun; how did you know it was a gun?
A: I know a gun when I see a gun. It was a gun.
Q: What part of it did you see?
A: I saw the whole gun, the bullets in the gun.
Page 142: Q: Was his finger on the trigger?
A: Yes, it was on the trigger.
*691 ON DIRECT TESTIMONY OF KENIKA KING (VICTIM'S DAUGHTER)
This witness testified that she accompanied her mother to the grocery store and was present at the time of the assault.
Page 167: Q: Where did he hit her?
A: Right there, her jaw.
Q: Where is that?
A: Right there (indicating).
Q: In her face, near her mouth, by her cheek?
A: Yes. When she got ready to hit him, he pulled out a gun.
Q: When she got ready to hit him? Oh, she went to hit him?
A: No, he hit her first and when she got ready to hit him he pulled a gun.
Q: How was she going to hit him?
A: With the bottle.
Q: Did she ever hit him?
A: No.
Q: He pulled out a gun; where did he pull it out from?
A: From his pocket.
Q: Did you see it?
A: Yes.
Page 168: Q: How did you know it was a gun?
A: Because I saw the handle and I saw how it looked and how it looked.
Q: Have you seen guns before?
A: Yes.
Q: You have?
A: Yes.
Q: Can you describe it to us?
A: It was  I forget what color it was, but I think it was green-looking. I'm not sure, but I saw the gun.
Q: You're sure it was a gun?
A: Yes.
ON DIRECT TESTIMONY OF DOREATHA RICHARDSON (EYEWITNESS/NEIGHBOR)
Page 203: Q: Now, do you know a person by the name of Sandra King?
A: I didn't know her at the time, but I know her now.
Page 205: Q: What about the lighting conditions back then?
A: The lighting was very good.
Q: Was it a clear day?
A: Yes, it was.
Q: Was it dark outside at all?
A: No, it was not dark at all.
Q: Was it getting dark; dusk?
A: No.
Page 207: Q: Did you actually see her strike him?
A: She never got a chance to strike him. He lifted the gun. I don't know where he got it from, but it was there.
Q: Now, how far away were you from this incident in car lengths?
A: It could be maybe about six cars.
Q: Do you have a clear view of what you saw?
A: Yes.
Q: And did you  you indicated that he had the gun in his other hand. Which hand did he have the gun in?
A: This hand, right hand. That's the one that he held it like this (indicating) in his hand.
Q: Okay. Now, what were exactly  or what did he do with this gun?
A: After he held it?
Q: Just when you first saw, what did he do with it?
A: He just held it in his hand and pointed it.
For all of the foregoing reasons, we find ourselves in the same position that this Court described in Williams v. State, 425 So.2d 591 (Fla. 3d DCA 1982) wherein the Court stated, at page 592, "While we therefore thoroughly disapprove of the argument, we cannot hold that it justifies reversal. The evidence ... was so overwhelming that the statements must be regarded as no more than harmless impropriety".
Affirmed.
FERGUSON, J., concurs.
GERSTEN, Judge (dissenting).
Because the prosecutor's inflammatory closing comments set my judicial soul afire, I must respectfully dissent. I would reverse based upon fundamental error.
*692 Appellant, Edward Hightower, appeals his convictions for aggravated assault and battery. Appellant was charged with striking a victim, and then threatening her with a gun.
There were three witnesses against appellant: the victim, the victim's daughter, and the victim's neighbor. The victim testified that she approached appellant and asked him if he was going to mug her, at which time appellant struck her.
The victim testified that after appellant hit her, she hit him with a bottle, and appellant then pointed a gun at her. She told appellant she would be back and left the scene.
Although there was testimony concerning appellant pointing a gun, no gun was recovered, either from the scene, or from appellant. At all times, the appellant admitted the battery but vehemently denied having, or using, a gun.
At trial, the most contested issue revolved around the credibility of the witnesses and appellant. Because there was no physical evidence regarding the gun, appellant's conviction rested on whom the jury believed.
But for the reprehensible and extraneous comments made by the prosecutor during closing, this appeal would have focused on the facts underlying the crimes charged, sufficiency of the evidence, and procedural due process. The prosecutor's improper behavior, however, has shifted the focus of this inquiry solely to his closing argument.
The prosecutor in his closing, went into a paroxysm attacking the public defender:
Now, Karen Miller is an excellent attorney. She's the Assistant Public Defender. She doesn't choose her clients and its her job and she does a good one to confuse witnesses, to try to put words in witnesses' mouths as she did on cross examination.
There was no reason for the prosecutor to draw the jury's attention to the fact that appellant was being represented by a public defender. There was no reason for the prosecutor to attack the credibility of the public defender. There was no reason to make such outrageous comments about the public defender.
The necessary implications flowing from the prosecutor's comments are that public defenders are second rate attorneys who are forced to represent the guilty, and whose job is to confuse the jury. The ultimate inference is that public defenders are unreliable and untrustworthy, and that they rely on obfuscating the evidence to obtain the acquittal of a guilty defendant.
It is ironic that the prosecutor made such a statement. The public defender epitomizes why so many have entered law school. They seek not fame or fortune. Instead, they seek the higher level of professional satisfaction of representing the people who most need legal representation.
Public defenders stand alone, armed only with their wits, training, and dedication. Inspired by their clients' hope, faith, and trust, they are the warriors and valkyries of those desperately in need of a champion. Public defenders, by protecting the downtrodden and the poor, shield against infringement of our protections, and in reality, protect us all.
The prosecutor's closing statement attacked not only defense counsel's status as a public defender, but also her integrity. In diminishing the defense attorney's credibility before the jury, the prosecutor deprived appellant of the protection of the Sixth Amendment of the United States Constitution, the right to a fair trial:
The foregoing remarks perhaps would not constitute fatal error were their effect limited solely to the person toward whom they were formally addressed  the defense attorney. We are concerned, however, that the remarks might have attitudinized the jurors against Appellant, and as such be prejudicial to his cause.
Adams v. State, 192 So.2d 762 (Fla. 1966).
In Adams, the Florida Supreme Court reversed a conviction not because the prosecutor's remarks conclusively prejudiced the defendant, not because the remarks could have prejudiced the defendant, not even because the remarks would have prejudiced *693 the defendant but, because they might have been prejudicial to his cause. Applying that standard to this case, appellant's conviction must also be reversed.
I believe that the prosecutor's attack on the credibility and integrity of defense counsel constitutes fundamental error which requires reversal. The line of cases holding that such an attack is improper is unequivocal. See Adams v. State, 192 So.2d at 762; Jenkins v. State, 563 So.2d 791 (Fla. 1st DCA 1990); Redish v. State, 525 So.2d 928 (Fla. 4th DCA 1988); Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984); Briggs v. State, 455 So.2d 519 (Fla. 1st DCA 1984); and Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982).
The prosecutor's comment deprived appellant of due process by injecting doubts into the jury's deliberations; doubts which were not about the defendant or the evidence, but rather the credibility of opposing counsel. The credibility of the public defender was not the issue and cannot be tolerated:
The public interest is ill served by conduct such as that exhibited by the prosecuting attorney in this case. The right of a person accused of a crime to be represented by counsel and to be fairly tried is basic to the concept of due process. Lack of respect for this essential requirement by an officer of the court cannot be tolerated, even if at the expense of requiring a new trial. Here there is no indication in the record of any genuine effort by counsel to remedy the prejudicial effect of his attack on opposing counsel. Further, there was no effective curative instruction by the court.
Carter v. State, 356 So.2d 67 (Fla. 1st DCA 1978).
On appeal, the State contends that the prosecutor's statement does not require reversal because appellant "never objected ... never asked for a curative instruction, nor asked for a mistrial."
The general rule is that an alleged error based on improper argument to the jury will not be considered by an appellate court unless a timely objection was registered in the trial court. However, when an improper remark to the jury can be said to be so prejudicial to the rights of an accused that neither rebuke nor retraction could eradicate its evil influence then it may be considered as ground for reversal despite the absence of an objection below, or even in the presence of a rebuke by the trial judge. [Emphasis added, citations omitted].
Pait v. State, 112 So.2d 380 (Fla. 1959); see also Robinson v. State, 520 So.2d 1 (Fla. 1988); Grant v. State, 194 So.2d 612 (Fla. 1967); McMillian v. State, 409 So.2d 197 (Fla. 3d DCA 1982); Pinder v. State, 396 So.2d 272 (Fla. 3d DCA 1981).
Stated differently, when the record demonstrates that the final arguments were such as to destroy the defendant's most fundamental right  the right to a fair trial  there is fundamental error, which mandates a new trial even in the absence of an objection by defense counsel. Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979).
The State further argues, on appeal, that the statement was not as improper or harmful as in other cases because:
There was no discussion about the defendant, the witnesses or the weapon used in the crime. The statements never went to the foundation or merits of the cause of action.
That is precisely why the comments constitute fundamental error which, even in the absence of: (1) an objection, (2) a motion for a curative instruction, or (3) a motion for mistrial, mandates reversal:
The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.
Bertolotti v. State, 476 So.2d 130 (Fla. 1985).
Finally, I find no merit in the State's contention that the cases cited in its brief *694 constitute examples of "more improper or harmful" closing arguments that did not result in reversals. The cases cited by the State are markedly different. Neither Cochran v. State, 280 So.2d 42 (Fla. 1st DCA 1973), nor Melton v. State, 402 So.2d 30 (Fla. 1st DCA 1981), nor Williams v. State, 441 So.2d 1157 (Fla. 3d DCA 1983), nor Gallon v. State, 455 So.2d 473 (Fla. 5th DCA 1984), involve an attack on counsel where, as here, it was suggested that the public defender was representing appellant only because it was her job. Further, the State suggested that the public defender has no choice but to represent appellant.
The prosecutor should not treat the courtroom as a place to ply rhetoric like a demagogue before a public crowd in Washington Square. Because the prosecutor's ephemeral comment affected the course of this trial, and because we as judges must clear the path for a fair trial, I would reverse and remand for a new trial so that justice, the elusive yet immutable, can prevail.