620 So.2d 1099 (1993)
Malla LANDRY, Appellant,
v.
STATE of Florida, Appellee.
No. 92-1066.
District Court of Appeal of Florida, Fourth District.
June 30, 1993.
*1100 Richard L. Jorandby, Public Defender, and Tanja Ostapoff, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Melynda L. Melear, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
In a trial marked by unseemly conduct by attorneys, appellant was convicted of three counts of aggravated assault on a law enforcement officer with a deadly weapon. We reverse the conviction and sentence because of improper prosecutorial argument, the cumulative effect of which was to deprive appellant of a fair trial. We also hold that the trial court erred in refusing to allow the appellant to cross-examine a law enforcement officer about his investigation by the FBI for using excessive force in another case. And, though not raised as a point on appeal, we find it necessary to comment disapprovingly of the conduct of counsel in this case.
According to the testimony of the three police officers involved in this incident, they responded to a report of domestic disturbance at appellant's residence. They testified that appellant called in the report and additionally advised them that there was an outstanding warrant for her husband's arrest. When the officers arrived at the home, they found appellant's husband, but not appellant. The officers checked to see if there was an outstanding warrant on the husband. As they were speaking to him in the backyard, appellant drove up the driveway at a high rate of speed, then veered off directly toward the group. The men jumped out of the way to avoid being hit. They testified that she was screaming obscenities at them, claiming that they had killed her son. Appellant then drove away, but shortly thereafter returned and drove her car into the outside of the garage. The officer extracted her from the vehicle forcibly, because she was grasping the steering wheel, kicking and screaming. The officers denied using excessive force.
A boarder at appellant's home told a very different version of the event. He testified that he was present during the entire incident and that appellant drove up at a normal speed to the group of officers around *1101 her husband. The husband told her that he was being arrested which agitated her because she told them that the charges against him had been dropped. The officer asked her to get out of the truck. She refused and made a U-turn in the backyard to begin to leave. Again, the officers requested that she get out of the truck. There was some name calling, and the officer walked away laughing, taking her husband to the front of the house.
Appellant then left but came back five or ten minutes later. She whipped into the driveway, hit her brakes, and slid into the garage. The officers then took appellant by the arms and dragged her out of the truck, five or six feet along the ground. The boarder saw bruises on her arm when she returned from jail. The jury convicted her on all charges.
Appellant argues that the cumulative effect of the prosecutor's improper comments in closing argument requires reversal. Because the argument is peppered with improper argument properly objected to, which objections were erroneously overruled, we agree and reverse.
The crux of the appellant's theory of defense was that the police officers were attempting to cover up their excessive use of force on appellant by fabricating the story regarding appellant's attempts to assault them with her vehicle. In anticipation of this defense argument, the prosecutor queried as to why "They [the police officers] would risk all of their years, their unblemished records [to lie in this case]." The defense objected that there was no evidence in the record which would support the statement that the officer's records were unblemished. The objection was overruled. Several other times during his closing argument the prosecutor referred to the "unblemished record" of the officers. While there was evidence that there was no internal investigation as a result of this arrest, there was no testimony regarding the overall record of these officers, other than Officer Pardon's statement that his personnel file contained only positive remarks and that he had been cleared of any wrongdoing in one case by an FBI investigation. Thus, appellant was correct that the claim regarding the unblemished records was not adequately supported by the record and constituted impermissible bolstering of the officers' testimony. E.g., Blackburn v. State, 447 So.2d 424 (Fla. 5th DCA 1984); Richmond v. State, 387 So.2d 493 (Fla. 5th DCA 1980); Francis v. State, 384 So.2d 967 (Fla. 3d DCA 1980). Because this case came down to a swearing match between the officers and appellant's witness, the error cannot be considered harmless.
The prosecutor also tried to denigrate appellant's defense. In his rebuttal closing argument, he made the following argument to the jury:
And I think that says a great deal about the defense's argument when they're not arguing to what was said by the witnesses in this case. But they're going back to jury selection and talking about Mr. Cooper, who's not even sitting as a member of this panel.
And I guess it's part of that little saying when you don't have the facts you argue the law, or when you don't have the law, you argue the facts. And when you don't have either, you just sort of try to conjure up, sign (sic) your fists and say no one is believable.
This comment was made in connection with the prosecutor's review of the boarder's testimony. A fair reading of the comment would be that the defense "conjured up" the boarder, or in other words was presenting false testimony. Such argument is highly improper. See United States v. Spain, 536 F.2d 170 (7th Cir.1976); Houston v. Estelle, 569 F.2d 372 (5th Cir.1978).
On rebuttal, after defense argument, the prosecutor stated "The point is [appellant] did come at him with that pickup truck for her own motives and reasons, some evidence I can't comment upon... ." The court denied the defense objection, and the prosecutor went on to say "the judge allows some evidence in and likewise he allows some evidence  keeps some evidence out. He allowed this piece of evidence in, but don't... ." He was cut off by the defense's motion for a mistrial on the basis *1102 of the prosecutor's suggestion that there was other evidence in the case that the jury was not made aware of. The trial court denied the motion.
This is clear error, made more egregious by the fact that just prior to starting rebuttal the prosecutor had asked the court to allow him to comment on the excluded evidence which the court denied. In Thompson v. State, 318 So.2d 549 (Fla. 4th DCA 1975), cert. denied, 333 So.2d 465 (Fla. 1976), this court held that it was fundamental error for a prosecutor to argue in closing that there was other evidence which could have been introduced but wasn't. We think that holding is dispositive. The state's brief does not attempt to justify this argument, nor do we think it could. There are few errors which could fundamentally affect a jury verdict in a criminal trial more than a prosecutorial argument tantamount to "trust me, there's more evidence here but I can't get it in because the judge won't let me."
Finally, the prosecutor made the following remarks to the jury regarding its function:
You took the oath whether you like the law or not. And, you know, when you're asked about your decision here being final, our system is huge. You have appellate courts, you have the supreme court .
Appellant moved for a mistrial on the grounds that the argument violated a prior ruling of the court regarding the availability of appellate remedies. The trial court denied the motion. This subject first came up when the defense attorney told the jury that their decision was final. At that time the trial court told the prosecutor that he could tell the jury that cases are appealable if there was a misrepresentation on the law or a question of law but not on the facts. Later, the court told the prosecution to stay away from the subject. Nevertheless, the prosecutor plowed forward with the above comment.
Appellant suggests that this comment left the jury with the impression that its role was advisory, because it would be reviewed by appellate courts. We agree with appellant's characterization. The jury may have been more inclined to convict, thinking that their decision could be corrected on appeal. Combined with the other errors in this case tried on credibility issues, this too was reversible improper comment.
Appellant raises other comments which she claims were improper. The only other one which merits mention is the prosecutor's references in closing to his military service in the Persian Gulf. While it is not independently reversible error, we think in the context of this case it was an improper attempt to curry favor with the jury, particularly where it is entirely irrelevant to any issue being tried or argued.
We also hold that it was error for the trial court to refuse to allow appellant to cross-examine one of the police officers about a past investigation by the FBI where he had been suspected of using excessive force. Appellant argues that evidence of the prior investigation was relevant to the officer's credibility to show his bias and motive for testifying, particularly where appellant was claiming that this officer used excessive force in removing her from her vehicle. Certainly, the defendant is allowed wide latitude in cross-examination to show bias on the part of a witness. See Breedlove v. State, 580 So.2d 605 (Fla. 1991). Where there is an issue of whether or not excessive force was used by the officer in this case, prior investigations into this officer's use of excessive force in other cases are relevant. Breedlove at 609, citing A. McD. v. State, 422 So.2d 336, 338 (Fla. 3d DCA 1982). Thus, it was error to restrict cross-examination of the officer on this matter.
In addition, we are compelled to address conduct by the attorneys in this case which appears to us to have exceeded the bounds of acceptable behavior by members of the bar in this state in a proceeding before a court. Apparently, the prosecutor, Mr. Alberto Milian, and public defender, Mr. Maury Halperin did not get along. The basis for the animosity is not entirely clear in the record. However, the attorneys engaged in several shouting matches before the judge.
*1103 We will not get into the length and breadth of the confrontations but they appeared to begin during voir dire and lasted until the end of the trial. During that time Mr. Milian called the defense attorneys "maggots" and "poor excuses for human beings" and defense attorney Halperin implied that the prosecutor was a "scum bag". At one point the court and the attorneys were arguing which term was worse.
To argue whether it is worse to be called a "maggot" or a "scum bag" in open court misses the point that this kind of behavior on both sides is entirely unacceptable and should not be tolerated from lawyers who have taken an oath of office and are required to abide by the Rules of Professional Conduct. See Peterson v. State, 376 So.2d 1230, 1233 (Fla. 4th DCA 1979).
The oath itself states:
"I do solemnly swear:"
"I will support the Constitution of the United States and the Constitution of the State of Florida."
"I will maintain the respect due to courts of justice and judicial officers,"... .
"I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor... ."
"I will abstain from all offensive personality... ."
While we often refer to trials and court proceedings in terms which reflect that the litigants are engaged in combat, the courtroom remains a place where civilized society resolves disputes without physical altercation. To accomplish that purpose it must remain a civilized setting. It is the duty of each attorney and each judge to maintain the decorum of the courtroom. Name calling is, as the judge below noted, a playground prank. It is unworthy of officers of the court who throughout three years of law school ought to have learned something about acceptable courtroom conduct. We express our emphatic disapproval with the hope it will prevent the spread of such conduct which demeans the trial court and may very well prevent either party from receiving a fair trial.[1]
We therefore reverse appellant's conviction and sentence and remand for a new trial.
ANSTEAD, HERSEY and WARNER, JJ., concur.
NOTES
[1] We would note that when the unpleasant exchanges began on voir dire one of the jurors said that the attorneys' antics were getting better than the trial. She characterized it as "The Young and the Restless". Attorneys should not be the focus of the trial. Fortunately, the name calling in this case occurred while the jury was absent.