634 So.2d 1124 (1994)
James Edward HALL, Appellant,
v.
STATE of Florida, Appellee.
No. 93-358.
District Court of Appeal of Florida, Fifth District.
April 8, 1994.
*1125 Terrence E. Kehoe of Law Offices of Terrence E. Kehoe, Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Kimberly D. Nolen and Kristen L. Davenport, Asst. Attys. Gen., Daytona Beach, for appellee.
W. SHARP, Judge.
Hall appeals from his convictions and sentences for resisting an officer with violence,[1] (Count I) and aggravated assault on a law enforcement officer with a firearm[2] (Count II). A jury found him guilty of both offenses. He was sentenced as an habitual offender to ten years on Count I, and twenty years on Count II, concurrently. He argues this case should be reversed and remanded for a new trial because of errors in admitting evidence of the arresting deputy's good-conduct record, and in failing to instruct the jury on necessarily included lesser offenses for Count II. We agree and reverse.
The major error in this case was the trial court's allowing the state, over defense counsel's objection, to inquire about Deputy Carpenter's good conduct record, and the lack of any disciplinary proceedings during his twelve years of service with the Orange County Sheriff's Office. Deputy Carpenter's good conduct record was again referenced in the state's closing argument.
In this case, the deputy testified he heard a BOLO for a red car containing three individuals, who were armed. It was approximately 3:30 a.m. He saw a car matching the BOLO description parked on a street, in a cul-de-sac of a residential subdivision. He saw two individuals occupying the car and observed the brake lights flash.
The deputy blocked the driver's door with his car, turned on his lights and gave orders to the driver to put his hands on the dashboard. The driver refused to obey the deputy's orders, cursed him, tried to get out of the car, and pulled a gun on the deputy. The deputy testified he did not shoot Hall because both Hall and the passenger looked so young (fourteen years-of-age), and the passenger could have been hit inadvertently.
Deputy Carpenter explained each of his actions which culminated in handcuffing Hall on the ground before "backup" deputies arrived, as necessary to safeguard his life. He was alone, although he had a K-9 dog in his car which was not used. It was dark, late at night and no other people were nearby. There were two potentially armed persons he had to deal with simultaneously. He also had to be concerned with one or both of them fleeing in their car, or using it as an additional weapon against him.
On cross-examination, the defense elicited from the deputy the fact that he was a large man;[3] Hall was a small individual. The deputy admitted to having said he ordered Hall out of the car in his arrest report. He grabbed Hall by the hair to "disable" him, drew his gun on him before he knew Hall had a weapon, and later after Hall was out of the car and on the ground, put his knee in Hall's back while handcuffing him.
The passenger also testified later that Hall at all times was trying to comply with the *1126 deputy's orders. He said the deputy ordered Hall to get out of the car. Hall tried to comply. Hall later crawled on the ground to the officer, as directed. He offered no resistance other than cursing and yelling. Hall did not pull the handgun on the deputy. Hall's gun remained at all times during the incident, on the floor board of the car.
From this testimony, the jury could have drawn the inference that Deputy Carpenter used excessive force in making this arrest. However, based on the deputy's testimony there were safety reasons for his actions. The jury could also have concluded that the deputy acted properly. It was indeed a classic swearing-contest between the two key witnesses.
Because of the disputed testimony in this case, and the primary focus on credibility, we think it was harmful error to allow the state, over defense objection, to bolster Deputy Carpenter's testimony by asking him about his good conduct record with the Orange County Sheriff's Department over the past twelve years. As the court pointed out in Jacob v. State, 546 So.2d 113 (Fla. 3d DCA 1989), in a factually similar case, the deputy's character and reputation was not put at issue by the defense. Pursuant to section 90.404(1)(b), Florida Statutes (1987), the state can "only introduce evidence concerning a pertinent character trait of the alleged victim (here, Deputy Carpenter) to rebut character evidence offered by the defense. 546 So.2d at 115. As in Jacob, the defense challenged the deputy's credibility as to his actions during this arrest incident, but not his reputation for truth and veracity or his reputation for being a peaceful, nonviolent officer.
The error is not harmless in this case, due to the nature of the evidence. Accordingly we must reverse and remand for a new trial. But in order to prevent other errors on retrial, we also note reversible error may have occurred in this case by the trial court's failure to instruct the jury on all the necessarily lesser included offenses requested by the defense counsel. See Abreau v. State, 363 So.2d 1063 (Fla. 1978).
Defense counsel requested an instruction on aggravated assault. For Count II (aggravated assault on a law enforcement officer), the trial court only instructed the jury on assault. Other lesser included offenses were aggravated assault,[4] assault on a law enforcement officer,[5] and simple assault.[6] In addition, the state failed to give Hall and his trial counsel written notice prior to sentencing, pursuant to section 775.084(3)(b), Florida Statutes (1991), that the state was seeking imposition of habitual offender sentences.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
THOMPSON, J., concurs specially with opinion.
THOMPSON, Judge, concurring specially.
I agree with the ruling of the court. I write only to address an issue argued on appeal by the state. The state argued that it should be allowed to present the absence of complaints against Deputy Carpenter to prove his good character. The state argued that this would assist the jury in the fact finding process in this swearing contest. In Wrobel v. State, 410 So.2d 950 (Fla. 5th DCA), review denied, 419 So.2d 1201 (Fla. 1982), this court held that it is inappropriate for the defendant to present evidence of the absence of prior criminal convictions to show good character since it was not in the form of reputation testimony. Wrobel, 410 So.2d 950 (citing Maloy v. State, 52 Fla. 101, 41 So. 791 (1906)).
The state now argues that we should allow the same type of testimony for Deputy Carpenter that has repeatedly been found inadmissible for criminal defendants and deceased victims. See Sanchez v. State, 445 So.2d 1 (Fla. 3rd DCA 1984); McCartney v. State, 510 So.2d 1157 (Fla. 3d DCA 1987). The case law against the use of this type of testimony is applicable equally to state witnesses as well as to defense witnesses. See *1127 generally Charles W. Ehrhardt, Florida Evidence §§ 90.404(1), 90.609 & 90.610 (1992 ed.); Landry v. State, 620 So.2d 1099, 1101 (Fla. 4th DCA 1993) (improper for the state to query officer about his "unblemished record").
NOTES
[1] § 843.01, Fla. Stat. (1991).
[2] §§ 784.021(1)(a), 784.07(2)(c), Fla. Stat. (1991).
[3] Six-foot-two inches; 230 pounds.
[4] § 784.021(1)(a), Fla. Stat. (1991).
[5] § 784.07(2), Fla. Stat. (1991).
[6] § 784.011, Fla. Stat. (1991).