678 So.2d 888 (1996)
Esperanza Meza CISNEROS, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1973.
District Court of Appeal of Florida, Fourth District.
August 21, 1996.
Richard L. Jorandby, Public Defender, and Cherry Grant, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee; and Anne Carrion, Assistant Attorney General, West Palm Beach, for appellee.
BAKER, MOSES, Jr., Associate Judge.
Appellant, Esperanza Cisneros, defendant below, appeals her conviction and sentence for possession of marijuana with intent to sell. We reverse and remand for a new trial because of the prosecutor's patently improper remarks during closing argument.
The State's case hinged squarely upon the believability of the testimony of Sergeant Tommy Hagler of the Okeechobee County Sheriff's Office. According to Sergeant Hagler, Customs intercepted a package containing approximately thirty-six pounds of marijuana. The package was addressed to "Romerez" at 3575 Northwest 12th Avenue, Okeechobee, Florida. There was also a tag on the package which indicated: "To Florenso Lopez, 3575 Northwest 12th Avenue, Okeechobee, Florida. From Emilio Lopez." Additionally, the package was wrapped in such a manner that its contents were not visible and no discernible odors emanated from it.
Sergeant Hagler arranged for the package to be delivered by UPS to 3575 Northwest 12th Avenue, Okeechobee, Florida. According to Sergeant Hagler, when the UPS driver arrived at the address he was met by the defendant. When the UPS driver advised *889 the defendant that he had a package for Romerez, the defendant responded by saying that Romerez lived with her and she was expecting her return at any time. Thereafter, she agreed to and did accept the package. However, prior to accepting the package the defendant asked the UPS driver, "Do I sign her name or do I sign my own name?" Despite being requested by the UPS driver to sign her own name, the defendant instead signed the name of "Frances Lopez."
Sergeant Hagler testified further that shortly after the defendant accepted the package she was arrested. At the time of her arrest, according to Sergeant Hagler, the defendant made several incriminating or critical statements to him. First, she stated she was taking the package to the woods to burn it. Second, she stated that she worked for Lopez and that Lopez was paying her to accept the package.
The defendant's version of the events differed significantly from Sergeant Hagler's. First, she denied any knowledge as to the contents of the package. Second, she testified as follows regarding the UPS driver:
He gave me the box and he says, Is this person living here? And I said no. And he asked me again, he asked me twice that if the person lived there, but he didn't mention no names.
Third, she denied ever saying to Sergeant Hagler that she was taking the package to the woods to burn it. Moreover, according to the defendant, she met Francis Lopez while the two of them were working in the fields. Lopez told her that she [Lopez] was having trouble receiving her mail and asked if she would accept a package for her which she agreed to do so.
The case proceeded to a jury trial with the defendant charged with the criminal offense of possession of cannabis over 20 grams with intent to sell. The offense consists of the following four elements: (1) that the defendant possessed the marijuana with the intent to sell it; (2) that the substance was in fact cannabis, also known as marijuana; (3) that the defendant had knowledge of the presence of the marijuana; and (4) that the marijuana weighed over 20 grams. During the trial, the defendant seriously contested the element of knowledge; moreover, there can be no doubt that the state's case on this critical element hinged upon the believability of Sergeant Hagler's testimony.
During closing argument, over timely objections both before and during closing argument, the prosecutor made the following remarks:
Now let's look at Tom Hagler. Fourteen years law enforcement ... I forget it was twelve/fourteen years law enforcement. What interest does he have in the case? Oh, to win this case. This is just one case, he told you he's made like a hundred controlled buys in the last two years, but this one case is special. This is the one case he picks up out and says, "This case makes me mad." "And out of hundreds of cases and I'm going to jeopardize my career." (Emphasis added)
All right. He picks this one out to make these fabrications. To win a case he jeopardizes his career, to win a case he's going to put someone in jail? (Emphasis added)
All right, he could of made up anything. Who would know. Who would know? Tom Hagler would know. Tom Hagler would know, and he's not the type of man to come in here. (Emphasis added) He's not the man to come in here and violate that oath. You saw how he testified and you saw how he tried to be as honest and straight forward as he could. He's not the type of man to come in and violate that sacred oath. (Emphasis added)
The prosecutor's argument in the instant case is no stranger to this Court; it is an argument which we have condemned on many occasions. On December 6, 1995, we condemned a nearly identical closing argument in Davis v. State, 663 So.2d 1379, 1380 (Fla. 4th DCA 1995). The condemned remarks were as follows:
The Judge is also going to tell you that you have the right to determine or to evaluate somebody's testimony by what they have to gain from it.... What does Officer Hadden and Officer Kahir have to gain by putting their careers in jeopardy, taking *890 the stand and perjuring themselves? (Emphasis added)
On January 26, 1994, we condemned another nearly identical closing argument in Clark v. State, 632 So.2d 88, 91 (Fla. 4th DCA 1994). The condemned remarks were as follows:
[W]ould they [the police] actually put their credibility with this Court, put their jobs on the line by coming in here and risking getting caught by not telling the truth in reference to one of their law enforcement cases? Does it mean that much that they would do that? Would they have taken it this far, what is their incentive to lie?

(Emphasis added)
On June 30, 1993, we condemned another nearly identical closing argument in Landry v. State, 620 So.2d 1099, 1101 (Fla. 4th DCA 1993), in which the prosecutor asked why
They [the police officers] would risk all of their years, their unblemished records [to lie in this case].

(Emphasis added)
We have repeatedly explained the reasons why such arguments are improper and we shall do so here again. First, although such comments may not in some instances constitute an affirmative statement of the prosecutor's personal belief in the veracity of the police officer, compare State v. Ramos, 579 So.2d 360 (Fla. 4th DCA 1991), Buckhann v. State, 356 So.2d 1327 (Fla. 4th DCA 1978), they do constitute an inappropriate attempt to persuade the jury that the police officer's testimony should be believed simply because the witness is a police officer. See Garrette v. State, 501 So.2d 1376, 1379 (Fla. 1st DCA 1987); Houston v. State, 394 So.2d 557 (Fla. 3d DCA 1981). Second, such comments make reference to matters outside the record and constituted impermissible bolstering of the police officer's testimony.
In the instant case, the prosecutor's argument that "Tom Hagler is not the type of man that would come in here and violate that sacred oath" constitutes an expression to the jury of the prosecutor's personal opinion as to the credibility of this particular witness. Additionally, this argument makes reference to matters outside the record. A trial is a solemn and sacred search for the truth and the lawyer's personal opinion as to the truthfulness of the testimony of any witness simply has no place in such a serious endeavor as this.
The only remaining question we must decide is whether the error can be deemed harmless or whether it requires reversal for a new trial. Here, it is unquestionably clear that the state's case hinged upon the believability of Sergeant Tommy Hagler, particularly on the critical element of knowledge. We stated in Landry, "[b]ecause this case came down to a swearing match between the officers and appellant's witness, the error cannot be considered harmless." 620 So.2d at 1101. Likewise, in the instant case, we cannot say beyond a reasonable doubt that these impermissible arguments did not contribute to the guilty verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). We therefore reverse the defendant's conviction and sentence and remand for a new trial. Our determination herein necessarily renders moot the defendant's remaining issues on appeal.
REVERSED AND REMANDED.
GUNTHER, C.J., and PARIENTE, J., concur.