693 So.2d 1046 (1997)
Larry William FRYER, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-156.
District Court of Appeal of Florida, Third District.
May 14, 1997.
Bennett H. Brummer, Public Defender, and Ada Manzano Avallone, Special Assistant Public Defender, for appellant.
*1047 Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for appellee.
Before NESBITT, GODERICH and SORONDO, JJ.
NESBITT, Judge.
Larry William Fryer appeals a judgment of conviction and sentence for burglary of an occupied structure and petit theft. We reverse.
Fryer was convicted of stealing $350 to $400 worth of aluminum from an aluminum window and sliding glass door manufacturing company. The state's case rested on the testimony of Sergeant Carlos Hernandez. Hernandez was working off duty doing "interior security" for the company.
Hernandez testified that he saw Fryer moving aluminum parts inside the loading area of the company. The officer then called for backup and, when it arrived, he ran to the area where he last saw the suspect. When he got there, he saw Fryer outside the twelve to eighteen foot fence topped with barbed wire that surrounded the loading area. Hernandez ordered Fryer to freeze; Fryer complied and was arrested. On cross-examination the sergeant recalled that Fryer was not cut, scratched, or bleeding when he was apprehended.
Defense counsel began his closing argument by declaring that Fryer could not have been the person Hernandez saw in the loading area given the absence of any scratches that should have been caused by climbing over barbed wire. Counsel then made the following unobjected-to comment:
I had a nightmare last night that you would come and look at the testimony of Officer Hernandez and think he was honest, or he seemed to be an honest man. He seemed to be a straightforward man. Why should I assume he is not telling the truth and convict on that. The nightmare was, that you would convict an innocent person on the word of Officer Hernandez, because he seemed to be telling the truth.
To this improper expression of personal opinion the prosecutor responded: "Ladies and Gentleman of the jury. The only nightmare that [defense counsel] had last night was that he knew his client was guilty. "(emphasis added). At that point the trial judge sustained an objection lodged by defense counsel and noted that the motion counsel wanted to make would be reserved. Inexplicably, the prosecutor continued: "He knows that this man is guilty, that Sergeant Hernandez took the stand and told you, I saw that man inside the business.... He knows it and that is his." (emphasis added). Another defense objection was this time overruled.
Another aspect of defense counsel's closing argument was that Hernandez, having been paid by the owner of the manufacturing company, had an interest in seeing that someone be convicted of committing the type of crime he was hired to prevent. In response to this theory the prosecutor, at least six times by our count, personally vouched for the credibility of the officer. For example: "If you believe the Sergeant, I am telling you to believe him, because he is a truthful man." While these six instances passed without objection, another did not:
[Prosecutor]: Officers do thisa lot of officers do overtime. That doesn't mean they have bias or interest or act any differently than if they were in their on-duty or marching the beat. They are not going to act any different. If you think this officer is going to compromise his ethics
[Defense counsel]: Objection, improper.
THE COURT: Mr. [prosecutor], please rephrase.
[Defense counsel]: Motion.
THE COURT: Reserve motion on it.
[Prosecutor]: Ladies and gentleman, yes, this officer would not come in this courtroom and lie to you
[Defense counsel]: Objection.
THE COURT: Objection is overruled.
(emphases added).
It is beyond dispute that these arguments are patently improper and violative of the rules of professional conduct. See Cisneros v. State, 678 So.2d 888 (Fla. 4th DCA 1996); Davis v. State, 663 So.2d 1379 (Fla. 4th DCA 1995); State v. Ramos, 579 So.2d 360 (Fla. *1048 4th DCA 1991); Singletary v. State, 483 So.2d 8, 10 (Fla. 2d DCA 1985); R. Regulating Fla. Bar 4-3.4(e). The only issues in this case are whether the prosecutor's arguments were a "fair reply" or "invited response" to defense counsel's arguments and, if not, whether they were harmless beyond a reasonable doubt.
With regard to the notion of an "invited response," we find the comments of the Supreme Court in United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), to be particularly instructive:
The situation brought before the Court of Appeals was but one example of an all too common occurrence in criminal trialsthe defense counsel argues improperly, provoking the prosecutor to respond in kind, and the trial judge takes no corrective action. Clearly two improper argumentstwo apparent wrongsdo not make for a right result. Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial. To help resolve this problem, courts have invoked what is sometimes called the "invited response" or "invited reply" rule....
* * *
[T]he Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly. In this context, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant.
* * *
[T]he reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. Thus the import of the evaluation has been that if the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.
Id. at 11-13, 105 S.Ct. at 1044-45.
While defense counsel's comments in this case may have been inviting, the prosecutor's response went well beyond simply "righting the scale." Given that the state's case hinged on the believability of Officer Hernandez, we cannot help but conclude that the prosecutor's repeated declarations of his personal belief in the officer's veracity, and his statements that defense counsel "knew" his client was guilty, had a detrimental effect on the jury's ability to judge the officer's testimony fairly.
Our conclusion is bolstered by what occurred during the jury's deliberations. At some point during those deliberations, the jury sent the trial court a note which read: "We want to go over the testimony of Officer Hernandez pertaining to his identification of the defendant inside the fenced area." After consulting with counsel for both sides, the trial court informed the jury that no transcript was available and asked them to rely on their "collective memory." Afterward, the jury sent the trial court two more notes indicating they could not come to a unanimous decision. The court asked them to continue deliberating, and they ultimately arrived at the verdicts on which the trial court based its judgment.
These facts reinforce our conclusion that the prosecutor's remarks compromised the jury's ability to fairly evaluate the evidence and, in turn, Fryer's right to a fair trial. These same facts compel the conclusion that the error cannot be considered harmless. Here, just as in Cisneros, 678 So.2d at 890, and Davis, 663 So.2d at 1382, we cannot say beyond a reasonable doubt that the impermissible arguments did not contribute to the verdict.
Accordingly, we reverse the conviction and sentence and remand for a new trial.
GODERICH, J., concurs.
SORONDO, Judge (Concurring specially).
I agree with the majority that the defendant's conviction for these crimes must be *1049 reversed. I write separately to expand on the facts of this case and address certain issues not raised in the majority opinion.
In what was, by all accounts, an immaculately fair trial, both the prosecutor and defense counsel decided to conclude their presentations by running amok in their closing arguments. A detailed review of this monumental display of attorney misconduct follows:
The first shot in this battle was fired by the defendant's attorney when he said in closing:
I had a nightmare last night that you would come and look at the testimony of Officer Hernandez and think he was honest, or he seemed to be an honest man. He seemed to be a straightforward man. Why should I assume he is not telling the truth and convict on that. The nightmare was, that you would convict an innocent person on the word of Officer Hernandez, because he seemed to be telling the truth.
Before he had even fully warmed up, defense counsel improperly expressed his opinion about the honesty of Officer Hernandez, the credibility of the officer and the innocence of his client. Later in his summation defense counsel refers to the officer as a "salesman" on five different occasions.[1] The suggestion in both of these arguments being that Hernandez was a dishonest man.
In addition to his first comment, during his summation, defense counsel on at least three other occasions impermissibly injected his opinion of his client's innocence,
Larry Fryer is innocent of any burglary. With everything I know and everything I believe, he is innocent.
Shortly thereafter he said,
Larry Fryer is innocent. I know.
Less than two lines later in the trial transcript he again says,
I know with everything that I know that Larry Fryer is not guilty. He was outside the establishment.... I am not going to come here and start covering for someone who I think is a burglar, that is not what is happening.
In this last statement he improperly suggests that he would not represent the defendant if he were truly a burglar. This argument was not merely improper but blatantly dishonest.
Finally, in suggesting that someone else committed the crime, defense counsel argued that the police either purposely or negligently failed to investigate footprints which were found at the scene or the presence of a second individual who, the defense suggested, was the actual burglar. This might have been a valid argument had any footprints been found at the scene or had anyone else been observed there. Unfortunately for the defendant, but posing no deterrent for his attorney, there is nothing in the trial record to substantiate such an argument. The state called three witnesses to the stand, Sergeant Carlos Hernandez, Officer Osvaldo Cabrera and the president of the company that owns the premises.[2] During the cross-examination of Sgt. Hernandez, defense counsel asked the following question and received the following answer:
Q. Isn't it true that on top of that building you found footprints?
A. Not that I can recall, sir.
A little later in the examination the following exchange took place:
Q. Did you find the other person you were looking for?
A. Did we find the other person we were looking for?
Q. With the ladder and dogs on the roof, did you?
A. Sir, I believe my testimony is that it is procedure to ascertain whether there is another subject or not.
On re-direct examination the prosecutor addressed the issue and asked:
Q. Officer, did you ever see anyone else?
A. No, sir.
*1050 Based on these exchanges defense counsel made the following arguments to the jury in closing:
And, whoever did it probably thinks they were not stealing, they probably think they were scraps of garbage. Whoever did it was guilty of trespass.
....
The guy who did it got away up on the roofhe got on the roof and bolted. He went to another roof and got away. They were looking for him and they didn't find him.
As concerns the non-existent footprints counsel argued:
He was outside the establishment and I had a good basis to ask about the shoes, because that is what I was told and that is what I know.
Characterizing these comments as reprehensible would be a grotesque understatement.
At no time did the prosecutor object to the comments of defense counsel or seek any type of curative instruction. One can only assume that he was sitting at counsel table, removing his gloves in anticipation of joining the bare-knuckle fist fight to which the defense attorney was inviting him.
On his way to the podium the prosecutor picked up the gauntlet defense counsel had so aggressively thrown before him. He began his summation by responding to his opponent's "I had a nightmare" speech as follows:
Ladies and gentlemen of the jury. The only nightmare that [defense counsel] had last night was that he knew his client was guilty.
The defendant's objection to this comment was sustained by the trial judge. Unimpressed with the court's ruling, the prosecutor continued,
He knows that this man is guilty, that Sgt. Hernandez took the stand and told you, I saw that man inside the business. He was carrying aluminum. I saw him later come off the fence. He knows it and that is his
Later in his argument the prosecutor responded to the assault on Officer Hernandez' integrity:
He called him a liar. He is calling Sergeant Hernandez a liar ...
Ladies and gentlemen, if you believe that, if you believe that is true, that the man is lying, find the defendant not guilty. I am telling you, but, I am also telling you he is not lying. He is an honest cop ...
He continued,

If you think this officer is going to compromise his ethics ...
Ladies and gentlemen, yes, this officer would not come in this courtroom and lie to you ...
Finally, the prosecutor referred to the defense attorney's suggestion that there was another person and unidentified footprints at the scene of the crime as a "smoke screen" and a distortion of the facts.
I address the prosecutor's comments individually and in reverse order. In my view the prosecutor's "smoke screen" and distortion of the facts comments were fair and invited responses to the defense attorney's bogus and completely unsubstantiated assertions that there were uninvestigated footprints at the scene of the crime and that the actual perpetrator had escaped onto another roof. There is absolutely nothing in this record to support either suggestion. Defense counsel asked the witnesses about the illusive footprints and no witness acknowledged their existence. Nor was there any direct or indirect evidence that there was a second person at the scene. These arguments by the defense did not amount to fair comment on the evidence and were, in fact, distortions of the facts. These two comments present a problem here only because of the prosecutor's failure to object during the defense attorney's closing argument. The significance of this failure to object is discussed below.
The prosecutor's three comments expressing his opinion of the officer's integrity and credibility constituted impermissible bolstering. Livingston v. State, 682 So.2d 591 (Fla. 2d DCA 1996); Cisneros v. State, 678 So.2d 888 (Fla. 4th DCA 1996); Williams v. State, *1051 673 So.2d 974 (Fla. 1st DCA 1996); Davis v. State, 663 So.2d 1379 (Fla. 4th DCA 1995); Clark v. State, 632 So.2d 88 (Fla. 4th DCA 1994), overruled on other grounds by T.B. v. State, 669 So.2d 1085 (Fla. 4th DCA 1996); Landry v. State, 620 So.2d 1099 (Fla. 4th DCA 1993); Garrette v. State, 501 So.2d 1376 (Fla. 1st DCA 1987); Blackburn v. State, 447 So.2d 424 (Fla. 5th DCA 1984); Richmond v. State, 387 So.2d 493 (Fla. 5th DCA 1980); Francis v. State, 384 So.2d 967 (Fla. 3d DCA 1980). The state's argument that these comments were invited by the defense attorney's improper assault on the officer's integrity is unpersuasive and requires discussion. The doctrine of invited comment does not contemplate that a prosecutor will sit silently while defense counsel pursues an impermissible line of argument so that he or she can then pursue his or her own impermissible and highly prejudicial response. In order to avail himself of the doctrine of invited comment the prosecutor in this case was obligated to object to the improper comments as they were made so that the trial judge could impose timely restrictions on defense counsel. It is important to remember that a criminal defendant rarely knows or has any control over what his lawyer is going to say during trial. Although he may be the ultimate beneficiary of his lawyer's improprieties (a factor which undoubtedly gave rise to the whole concept of invited comment), he should not be required to suffer what amounted in this case to a waiver of his constitutional right to a fair trial because of his lawyer's overzealous indiscretions. Had the prosecutor in this case objected to defense counsel's initial "I had a nightmare" comment, the trial judge could have sustained the objection and given a cautionary instruction to disregard the offensive comments and cautioned counsel about any further impermissible argument. Had that proven insufficient the court could have reprimanded defense counsel and, if necessary, disciplined him. The prosecutor's "invited response" could then have been tailored to such as would be consistent with fairness and due process of law. Just as defense counsel must object to improper comments of the prosecutor in order to preserve them for appellate review, Huff v. State, 437 So.2d 1087 (Fla.1983); Sanders v. State, 638 So.2d 569 (Fla. 3d DCA 1994); Adams v. State, 585 So.2d 1092 (Fla. 3d DCA 1991); Thompson v. State, 318 So.2d 549 (Fla. 4th DCA 1975), so must a prosecutor object to defense counsel's improper comments at trial in order to avail himself of the doctrine of invited comment.[3]
The prosecutor's first comment, "... he knows that his client is guilty," was improper in every conceivable way. Most significantly, it is not a fair comment on the evidence, the only acceptable subject of closing arguments. Duest v. State, 462 So.2d 446 (Fla.1985); Scott v. State, 619 So.2d 508 (Fla. 3d DCA 1993). Next, because the defense attorney had just concluded his summation in which he told the jury that the evidence had failed to prove his client guilty, the prosecutor's statement constituted a direct attack on the defense attorney's character, essentially calling him a liar. Hightower v. State, 592 So.2d 689 (Fla. 3d DCA 1991); Briggs v. State, 455 So.2d 519 (Fla. 1st DCA 1984).
I am not blind to the reality that good trial lawyers often become emotionally involved with their cases. It is, however, axiomatic that all lawyers must be held to a very high *1052 level of ethical behavior. As pertinent to this case the prosecutor's responsibility was clear:
The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
ABA Standards for Criminal Justice 3-5.8(b)(3d ed. 1993).[4] The commentary to this standard clarifies the perils to be avoided:
Expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued....
The line between permissible and impermissible argument is a thin one....The prohibition in this Standard pertains to the prosecutor's personally endorsing, vouching for or giving an opinion. The cause should turn on the evidence, not on the standing of the prosecutor, and the testimony of witnesses must stand on its own.
ABA STANDARDS FOR CRIMINAL JUSTICE 3-5.8 cmt. (3d ed. 1993). The ethical obligations of the defense attorney in this case were also clear:
A lawyer shall not in trial, ... assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.
R. Regulating Fla. Bar. 4-3.4(e). I find the behavior of both lawyers in this case to have been deplorable, and far below that which is acceptable from members of the Florida Bar.
In evaluating the impact of all of these comments it is important to note that the state's case depended entirely on the testimony of Sgt. Hernandez. Although the officer testified that he saw the defendant inside the property and subsequently detained him as he descended the outside of the fence surrounding the property, there was evidence which served to rebut the suggestion that the defendant was descending rather than climbing at the time of his detention. The fence was described in the record as being in excess of ten feet high. Above the fence were another several feet of barbed wire. The defendant would have had to climb over and/or through that barbed wire in order to exit the property at that location. The testimony of the two officers who placed the defendant under arrest established that the defendant had no injuries whatsoever nor were his clothes torn in any way. Clearly, the state's case was by no means overwhelming. In Lopez v. State, 555 So.2d 1298 (Fla. 3d DCA 1990), this court held that in order for a prosecutor's comment to merit a new trial, the comment must be of such a nature as to: 1) deprive the appellant of a fair trial; 2) materially contribute to his conviction; 3) be so harmful or fundamentally tainted as to require a new trial; or 4) be so inflammatory that they might have influenced the jury to reach a more severe verdict than that which they would have reached otherwise. Although defense counsel's comments in closing were highly improper, the prosecutor's response went well beyond the realm of permissible comment and satisfies the requirements of Lopez for the granting of a new trial.
NOTES
[1] The defendant's brief directed this Court's attention to Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982) on at least three occasions. In that case we chastised the prosecution and reversed the defendant's conviction for referring to defense counsel as a used car salesman. Clearly, defense counsel has read that opinion too narrowly.
[2] The defense presented no case.
[3] I do not suggest that every improper comment made by a defense attorney can be remedied by the sustaining of an objection thereto or even by the giving of a cautionary instruction. Certain bells once "rung" cannot be "un-rung." Whether an improper comment made by a defense attorney during a criminal trial can be remedied by an instruction from the court or must be addressed by the prosecutor during summation, and the extent to which it should be addressed, is an issue best consigned to the sound discretion of our trial judges.

It should be stressed that not every invitation to respond requires an objection. There are many permissible comments which open doors to areas where prosecutors ordinarily may not go. For example, where a defense attorney comments on his client's silence at the time of arrest and suggests a reason for that silence, the prosecutor would certainly be able to respond to the suggestion even though no objection to the comment was made. The distinction being that defense counsel's original comment was permissible. Likewise, if the prosecutor objects to a comment but the objection is overruled by the court, the prosecutor would be able to avail himself or herself of the doctrine of invited comment because the court, by overruling his or her objection, had determined that defense counsel's comment was permissible.
[4] Florida has adopted the ABA's STANDARDS FOR CRIMINAL JUSTICE relating to Prosecution Function Standards. See R. Regulating Fla. Bar 4-3.8 cmt.