700 So.2d 458 (1997)
Edwin A. REYES, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3310.
District Court of Appeal of Florida, Fourth District.
October 22, 1997.
*459 Richard L. Jorandby, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
STONE, Chief Judge.
We affirm Appellant's conviction on two counts of sale of cocaine. The trial court did not abuse its discretion in overruling objections to the state's closing argument.
The evidence reflects that Appellant sold drugs to an undercover deputy, working as part of a team, who testified to making two separate purchases from Appellant, each time paying with a marked bill. Appellant did not have the bills when arrested twenty minutes later. The delay between the sale and the arrest was necessary to protect the witness' cover.
During opening statement, cross-examination, and in closing argument, the defense highlighted the fact that no cocaine or money was found on Appellant. The state countered in its closing argument that there could be many reasons for Appellant not to keep the money or drugs on his person, and that failure to find money or drugs on Appellant did not necessitate a finding of innocence. The state hypothesized that Appellant could have given the marked money to someone else or ditched it in order to prevent getting caught by police, saying:
The fact that the money that was given to the Defendant by the agent was not found on him. Let's talk about that a little bit. Use your common sense. Could he have got the money, could he have handed it off, passed it to some of those other people that were milling about? Could he have gone somewhere and put itditched it or given it to someone? Could he have changed it? What is a drug dealer likely to do? Is he going to hold on to this money? Is he going to sit there like a sitting duck waiting for the officer or somebody that just engaged a transaction that could be an undercover officer to come back and find them with the evidence *460 on him? This money goes quick. It is passed from one hand to another. It is got to be rid of.
* * * * * *
Defense wants you to immediately conclude that because there were no drugs on this guy that he is innocent. Well, again, you use your common sense. Is somebody like this going to keep a large amount ... of drugs tucked away in his little pocket so when the police come and he's arrested he can have a charge with a higher crime, having a larger quantity, a pound of cocaine on him or is somebody more likely to have one piece and sell it, go back to their little spot and recover more and sell again. So it's when they are arrested they are not found with a large quantity of dope on them. So, they are not charged with the higher crime. Use your common sense. They just don't have dope on them when they are arrested doesn't mean he didn't sell.
Appellant objected to this line of argument and to the following:
This wasn't videotaped as Defense argues... As a result, we have to rely on honesty, integrity and good memory of the officers that engage in these kinds of transactions. Ask yourself what kind of bad motive heard from Officer Aurigemma. Did he appear as though he was trying to deceive you? Was there any bad motive? Did it appear as though he was trying to lie?
Appellant alleges that the prosecutor impermissibly commented on what other drug dealers do. This type of information has been held inadmissible by this court as irrelevant and highly prejudicial. See Shelton v. State, 654 So.2d 1295 (Fla. 4th DCA 1995). In Shelton, a defendant appealed a conviction for sale of cocaine. During cross-examination of the undercover officer, defense counsel brought out that the defendant did not have the $20 bill in his possession when he was arrested. On re-direct, the state countered by asking the arresting officer, "When thiswhen you mark money for identification, based on your experience as an undercover detective, do you always recover the money?" The officer responded, "No. We don't always recover the money." The state then asked "would it be considered abnormal or out of the ordinary that the money was not received?" The officer said it would not be abnormal. The state then asked "Do you always recover drugs on these undercover arrests?" The officer responded "no, rarely." Id. at 1296. This court held that this testimony was inadmissible and highly prejudicial, reasoning that:
Every defendant has the right to be tried based on the evidence against him, not on the characteristics or conduct of certain classes of criminals in general. Florida courts have frequently criticized the use of testimony from police officers regarding their experience with other criminals as substantive proof of a particular defendant's guilt or innocence.
Id. (quoting Lowder v. State, 589 So.2d 933, 935 (Fla. 3d DCA 1991)). See also Dean v. State, 690 So.2d 720 (Fla. 4th DCA 1997) (reversible error for prosecution to elicit testimony from detectives about their past experience with the generalized behavior of drug traffickers, including that people often consent to a search of their luggage, even when it contains contraband; "mules" carrying contraband sometimes do not carry much money and generally are not paid until delivery; and people traveling with a false name on their tickets generally are involved in illegal activity); Thomas v. State, 673 So.2d 156 (Fla. 4th DCA 1996) (trial court reversibly erred by permitting testimony from detective that often one individual is actually in possession of the drugs while another person collects the money).
We deem this line of authority inapposite to the argument in question here. In those cases, the state was asserting testimony of generalized common practices among drug dealers as proof of guilt. Here, however, the prosecutor is simply hypothesizing about reasons why a drug dealer may not have marked money or drugs on him at the time of arrest. Judges have discretion to allow attorneys wide latitude in making legitimate arguments to the jury, including assertions of logical inferences. Watson v. State, 651 So.2d 1159 (Fla.1994). "Merely arguing a conclusion that can be drawn from evidence *461 is permissible fair comment in closing." Mann v. State, 603 So.2d 1141, 1143 (Fla. 1992). See also Bertolotti v. State, 476 So.2d 130 (Fla.1985) (proper purpose of closing argument is to review evidence and to explicate those inferences which may reasonably be drawn from the evidence).
Here, the asserted hypothesis is reasonable, particularly as there were other people in the area after the drug transaction. See U.S. v. Champion, 813 F.2d 1154 (11th Cir. 1987) (suggestion in prosecution's closing argument that defendant, who had to support his family on job paying $250 per week, would not have been able to rent land cruiser for $2000 and take his family and his babysitter on vacation unless he had additional income coming in from his drug-smuggling activities, was permissible inference from evidence that defendant had incurred financial obligation that would appear to have been more than he could afford).
As to the other final argument issue, we do not deem the state's comments concerning the credibility of the witness to be an improper bolstering. Certainly, the state may not vouch for the credibility of a police officer. See Cisneros v. State, 678 So.2d 888 (Fla. 4th DCA 1996); Davis v. State, 663 So.2d 1379 (Fla. 4th DCA 1995). This court has frequently condemned comments such as "the officer was not the kind of person who would come in here and violate [an] oath". Cisneros. However, here, the comment does not constitute an expression of the prosecutor's personal opinion as to the credibility of the witness.
This court has also condemned arguments such as, "What does Officer ... have to gain by putting their careers in jeopardy, taking the stand and perjuring themselves." Davis, 663 So.2d at 1380. "[W]ould they [the police] actually put their credibility with this Court, put their jobs on the line by coming in here and risking getting caught by not telling the truth...." Clark v. State, 632 So.2d 88, 91 (Fla. 4th DCA 1994), overruled on other grounds, T.B. v. State, 669 So.2d 1085 (Fla. 4th DCA 1996). See also Landry v. State, 620 So.2d 1099, 1101 (Fla. 4th DCA 1993); Fryer v. State, 693 So.2d 1046 (Fla. 3d DCA 1997); Williams v. State, 673 So.2d 974 (Fla. 1st DCA 1996). However, in this case the state was not arguing that because the witness was a police officer, his testimony is more believable than that of another, or that the officer would be putting his job on the line by testifying falsely. Rather, the state asked the jury to evaluate the witness' credibility, and told the jurors to ask themselves what motive the officer would have to deceive them.
In any event, even if the state's argument here is considered improper, any error in overruling Appellant's objection is harmless. Buckner v. State, 689 So.2d 1202 (Fla. 3d DCA 1997).
In Buckner, the court found, noting Cisneros and Davis, that the state's improper bolstering of an officer's testimony was harmless, reasoning that:
[I]n order for a prosecutor's comment to merit a new trial, the comments must be of such a nature as to: (1) deprive the appellant of a fair and impartial trial; (2) materially contribute to his conviction; (3) be so harmful or fundamentally tainted as to require a new trial; or (4) be so inflammatory that they might have influenced the jury to reach a more severe verdict than that which they would have reached otherwise.
Id. at 1203 (quoting Lopez v. State, 555 So.2d 1298 (Fla. 3d DCA 1990)). Here, we are satisfied that any error with regard to the final argument was harmless.
POLEN and STEVENSON, JJ., concur.