613 So.2d 1345 (1993)
James GOEKE, Appellant,
v.
John D. GOEKE, Guardian of the Estate of William John Goeke, Incapacitated, Appellee.
No. 92-00883.
District Court of Appeal of Florida, Second District.
February 12, 1993.
Rehearing Denied March 5, 1993.
Peter C. Clement, Palm Harbor, for appellant.
John K. Renke, II, New Port Richey, for appellee.
*1346 ALTENBERND, Judge.
This appeal arises from an adversary proceeding between twin brothers in the guardianship of their father, William Goeke. John Goeke, as guardian, is attempting to open several new individual retirement accounts ("IRAs") for his father in order to better safeguard those assets. At the same time, however, John is attempting to change the beneficiary designation on the IRAs so the assets remaining in the account when his father dies will be given only to John and not to his twin brother James. James argues that the circuit court should have granted a continuance in a critical hearing in this adversary proceeding, and that it should not have authorized John to execute IRA beneficiary forms designating only John as primary beneficiary of their father's IRAs.
We affirm the decision to deny the continuance and proceed with the hearing. Although we agree that an earlier IRA designation form executed by John was legally insufficient to make both brothers joint primary beneficiaries on these accounts, we reverse and remand for an additional hearing concerning the circuit court's decision to make John the permanent, exclusive beneficiary on all IRA accounts. The guardian's attorney erroneously convinced the court that the guardian could not list his brother as a beneficiary on those accounts.
For the reasons that follow, we hold that a guardian, with the approval of the court, does have statutory power to establish and modify IRA trusts or IRA custodial accounts for the ward. This power includes the authority to designate the ward's estate or family members as beneficiaries for the IRA contract. See § 744.441(17), (19), (21), Fla. Stat. (1991). In light of the obligation to avoid any conflict of interest between the guardian and the ward, we conclude that the interests of justice will be served by a new hearing concerning the terms and conditions of the IRA contracts, including the designation of beneficiaries, that would be appropriate for and in the ward's best interests at this time. See § 744.446, Fla. Stat. (1991).

I. THE GUARDIANSHIP AND THE IRA
William Goeke is seventy-one years old. His only immediate family members are twin sons, James and John Goeke. William Goeke suffered a stroke in 1986, and was declared incompetent on April 1, 1986. John was appointed guardian of his father's person and property. At that time, William Goeke's primary asset was a single IRA account with Citibank containing approximately $800,000.
William Goeke had established the IRA account in 1981, apparently as a rollover IRA from a pension plan. The record contains no information concerning the pension plan or the persons designated as beneficiaries under that plan. When the IRA was established, William Goeke signed a Citibank document that made John the primary beneficiary and James the secondary beneficiary. We note that the Citibank form did not provide extra space for multiple primary beneficiaries, but the instructions on the form did mention this possibility.
After William Goeke signed this form, he executed a Florida will in 1983 and a New York will in 1985. Both of these wills leave his tangible personal property and his residuary estate to the twin sons, "share and share alike, per capita." It is unclear from the record whether William Goeke understood that the assets in his IRA would not be distributed pursuant to the plan described in his two wills because of his earlier election on the Citibank form. The attorneys who prepared these wills and the witnesses who signed them have provided no evidence to the trial court on this issue.
In April 1986, shortly after he was appointed guardian, John Goeke signed a new beneficiary form with Citibank. He did not, however, sign the form in his capacity as guardian, and he did not obtain court approval. He signed the form relying upon a power of attorney that his father had given to him prior to the guardianship. Apparently, John did not know he had been appointed guardian when he relied on the power of attorney. Under this new election, John and his twin brother were to *1347 receive the assets of the IRA equally in the event of William Goeke's death.
In the beginning, the father's guardianship proceeded without much controversy between the brothers. In late August and early September 1991, however, John filed petitions: 1) to recover his father's Rolex watch from his brother; 2) to evict his brother from their father's house; and 3) to change the beneficiary status on the IRA so that he alone would inherit the funds in that account. While it is arguable that these decisions were taken by John in his capacity as guardian to protect his father, they clearly evince a growing animosity between the two brothers. In his individual capacity, John stands to gain a substantial monetary benefit if he, as guardian, can rescind the IRA election that he signed as attorney-in-fact under the power of attorney.

II. THE CONTINUANCE
When the petition regarding the ward's IRA account was scheduled for hearing, James' attorney was ill. Another attorney appeared and requested a continuance. The court denied the continuance because the petition included a request to create several new IRAs and to transfer funds into the new accounts in order to fully insure these assets. Moreover, the court needed to authorize certain transactions that had to be done in the very near future to avoid adverse tax consequences.
We affirm the discretionary decision to proceed with the hearing. In order to fully protect William Goeke, the guardian reasonably needed an order authorizing a transfer of the funds into the new, fully insured accounts. Under all the circumstances of this case, it was within the circuit court's discretion to deny the requested continuance. At least on a provisional basis, the court needed to specify the beneficiaries on the new accounts. In light of our additional rulings, we do not need to determine whether the court should have continued the hearing on the issue of the permanent beneficiary or beneficiaries for the new IRA accounts.

III. THE POWER OF ATTORNEY
The circuit court determined that the beneficiary election form signed by John Goeke was invalid because the power of attorney did not give him the authority to make this decision after his father was declared incompetent. We agree that the power of attorney did not authorize John to execute the new beneficiary election form. Under the common law, a power of attorney that was not coupled with an interest was revoked by an adjudication of incompetency of either party. Millman v. First Fed. Sav. & Loan Ass'n, 198 So.2d 338 (Fla. 4th DCA 1967). See also § 709.08(2), Fla. Stat. (Supp. 1992) (durable power of attorney automatically revoked upon adjudication of incompetency).

IV. THE GUARDIAN'S POWER UNDER SECTION 744.441(17), (19), AND (21), FLORIDA STATUTES (1991)
Because the power of attorney did not give John the authority to execute the new beneficiary form, the trial court concluded that it was obligated to enforce the designation in the 1981 Citibank form. The court was persuaded that it could not consider the two subsequent wills or other evidence relevant to the decision which would be appropriate and in the best interests of William Goeke in 1991. We conclude the court was not compelled to regard the 1981 form as dispositive concerning the guardian's selection of beneficiaries for the several IRAs in 1991.
It is clear from the record that the trial court would have preferred to leave the twin brothers as equal primary beneficiaries on the IRAs. It was the guardian's attorney who convinced the court that the guardian and the judge jointly lacked the power to distribute this account under the estate plan described in the two subsequent wills. The trial court was undoubtedly influenced by the comparison between a beneficiary of an IRA and a beneficiary of a will. Guardians do not have broad, express statutory powers to write wills for their wards. Section 744.441(18), Florida Statutes (1991), permits a guardian to execute a codicil amending the ward's will, but only *1348 to gain a specific estate tax benefit.[1] We do not regard a designation of a beneficiary in an IRA agreement, however, to be equivalent to writing or amending a will. Indeed, we conclude that the guardian with circuit court authorization could designate the estate of William Goeke as the primary beneficiary in order for these assets to be distributed pursuant to the ward's own will.
Section 744.441, Florida Statutes (1991), enumerates many powers that the guardian may exercise with the approval of the court. Three of these powers, when examined together, support our decision. Subsection (19) authorizes the guardian to create revocable or irrevocable trusts in connection with estate planning. Subsection (21) allows the guardian to enter into contracts that "are appropriate for, and in the best interest of, the ward." An IRA trust account or custodial account is a creature of federal tax law that has some of the common law characteristics of a trust and some of a contract. I.R.C. § 408(a), (h). While an IRA is clearly not a trust for all aspects of Florida law, for the purposes of section 744.441, we conclude that these two statutory powers permit a guardian to create and modify such accounts, when appropriate for, and in the best interests of, the ward.
Subsection (17) permits a guardian to make gifts of the ward's property to members of the ward's family in estate and income tax planning procedures. See In re Guardianship of Bohac, 380 So.2d 550 (Fla. 2d DCA 1980). An IRA is a tax planning procedure that can affect the ward's income tax. Thus, subsection (17) supports a designation of the ward's family members as beneficiaries of an IRA. Obviously, an exercise of this power, like many other powers described in section 744.441, should be approved by the circuit court with caution and deliberation.
Since it is clear that the circuit court did not realize that the guardian had this power, and that it had discretion to approve the use of this power, we conclude that this issue must be remanded for a further evidentiary hearing in order for the court to give the guardian the full guidance that he requested and the ward clearly needs.
Affirmed in part, reversed in part, and remanded for further proceedings.
RYDER, A.C.J., and DANAHY, J., concur.
NOTES
[1] We note that the model uniform probate and guardianship codes expressly withhold from the guardian the power to execute a will. Unif. Probate Code § 5-407, 8 U.L.A. 485 (1969); Unif. Guardianship and Protective Proceedings Act § 2-307, 8A U.L.A. 495 (1982).