682 So.2d 155 (1996)
Ronald D. GOTER, as Personal Representative of the Estate of John T. Murphy, Appellant,
v.
Dorothy BROWN, Appellee.
No. 95-0046.
District Court of Appeal of Florida, Fourth District.
May 29, 1996.
Opinion Denying Rehearing September 25, 1996.
Motion for Rehearing Stricken November 6, 1996.
*156 Paul R. Regensdorf of Fleming, O'Bryan & Fleming, P.A., Fort Lauderdale, for appellant.
Robert A. Huth, Jr., of English, McCaughan & O'Bryan, P.A., Boca Raton, for appellee.
FARMER, Judge.
In his last willwhich had been revised not long before his deathdecedent left to Ronald Goter, "the rest, residue and remainder of my property * * * including stocks, bonds and other financial securities held in brokerage accounts." At the time of his death, he held funds in an IRA account with PaineWebber. His sister, Dorothy Brown, claimed the IRA funds, arguing that the provision in the will was ineffective to countermand the designated beneficiary in the IRA account papers. The probate judge agreed with her. He appeals. We reverse.
The probate judge concluded that an IRA account is "a trust account only as it applies to federal tax law," citing Goeke v. Goeke, 613 So.2d 1345 (Fla. 2d DCA), rev. denied, 621 So.2d 1065 (Fla.1993).[1] From this proposition, the court reasoned that the IRA "cannot be established as a `trust account,' the distribution of which can now be determined by the decedent's last will."
We are unwilling to make such broad pronouncements regarding the nature of IRA's. For one thing, these accounts are held in many forms, e.g. traditional trust accounts, bank accounts, stock brokerage accounts, and even insurance policies. They may be true trusts, or they may be merely custodial accounts in which the custodian has little if any power to decide on the disposition of the funds. To say that they are all categorically the one or the other is to ignore the versatility and flexibility of this tax deferral device. It is necessary in every case to look to the form of the account and the documentary language governing the holding.
*157 In this instance, the IRA documents show that initially decedent designated his sister as the primary beneficiary. At that time, his will provided that she would take all of his employment related pension and retirement funds. The IRA documents do not specify a procedure for changing the beneficiary, however, but do provide that the asset manager, PaineWebber:
"may conclusively rely upon, and shall be protected in acting upon, any written or oral order from the Customer or any notice, request, consent, certificate or other instrument or paper believed by it to be genuine and to have been properly executed, so long as it acts in good faith in taking or omitting to take any action in reliance thereon."
Years later, when decedent made the critical change to his will naming Goter to take any stock brokerage accounts, he also then gave his sister all his life insurance benefits and a $50,000 specific bequest, thereby changing the entire scheme of his testamentary distribution.
If a telephone call or other form of oral instruction by decedent to PaineWebber would have sufficed to make an enforceable change in the designated primary beneficiary of the IRA, then surely the more formal and quite reliablemeans of naming the beneficiary in a properly executed will should be sufficient as well. Reading the language of the IRA documents and the last will together, we conclude that in this case the testamentary change was entirely effective to change beneficiaries. The IRA is undoubtedly a brokerage account within the meaning of the residuary clause of the will. It follows that Goter takes the brokerage account.
REVERSED.
GLICKSTEIN and KLEIN, JJ., concur.

ON MOTION FOR REHEARING
FARMER, Judge.
In her motion for rehearing, appellee Brown newly advances what she describes as a missing second page to the account agreement between the testator and PaineWebber, Incorporated. In this previously unseen second pagewhich, we hasten to add, was never adduced in the trial courtthere is the following provision:
"5.5 The term `beneficiary' means the person or persons designated as such by the `designating person' (as defined below) on a form acceptable to the Custodian for use in connection with the Adoption Agreement signed by the designating person, and filed with the Custodian. The form may name persons or estates to take upon the contingency of survival. However, if no such designation on such a form effectively disposes of the IRA as of the time such distribution is to commence, the term `Beneficiary' shall mean the designating person's estate. The form last accepted by the Custodian before such distribution is to commence, upon becoming effective during the designating person's lifetime shall be controlling, and whether or not fully dispositive of the IRA, thereupon shall revoke all such forms previously filed by that person. The term `designating person' means the Customer during his or her lifetime; after Customer's death, it also means the Customer's spouse if the spouse begins to receive a portion of the IRA (pursuant to such a designation by the Customer) under a form of distribution."
If this text had been presented to the trial judge and accepted as the controlling document, plainly under the rationale of our decision we would have decided on the merits that the IRA would not then pass under the particular residuary clause in this case.
The problem, however, is that the document was never raised or presented in the trial court. Indeed, during oral argument in the case, appellee Brown's counsel responded to questioning as follows:
"JUDGE KLEIN: The account agreement between PaineWebber and the decedent, did it discuss how the beneficiary form might be changed?
"MR. HUTH: No sir, it didn't.
"JUDGE KLEIN: Did it require him to give notice in writing to PaineWebber if he decided to change his beneficiary?
"MR. HUTH: No, that's the problem."
Thus, not only was the document never presented to the trial court, its very existence *158 was disclaimed by its proponent in argument in this court. The question raised is whether we should grant rehearing under these circumstances.
Appellee Brown has not suggested that the appellant Personal Representative failed to produce the document in response to a proper request for production. On the contrary, she alleges that PaineWebber failed to produce it in response to such a request. Actually, she avers that PaineWebber produced only the page relied on by the trial court in making its decision and reviewed by us and quoted in our original opinion. Moreover, she adds that it was only after reading our opinion that PaineWebber contacted her counsel and furnished this new document.[1] We also note that there is no evidence furnished with this unprecedented appellate production, demonstrating that the decedent ever manifested assent to its terms; nor is there any evidence from either appellee Brown or PaineWebber as to why in the exercise of due diligence it was not produced in the trial court.
Under these circumstances, we have little hesitancy in concluding that this is all too late to change our initial decision. It seems to us starkly unfair to allow a party who has fought the battle below and on appeal on one evidentiary basis, to be given leave to fight it on appellate rehearing on quite a different one. Moreover, even if there were no unfairness present, it hardly needs belaboring by us that none of this relates to something we overlooked or misapprehended, the standard for rehearings on appeal. See Florida Rules of Appellate Procedure 9.330(a) ("A motion for rehearing ... shall state with particularity the points of law or fact that the court has overlooked or misapprehended.").
Our original decision was predicated on the only IRA account document presented below. It is not possible to read our decision as expressing the view that the residuary beneficiary of the Will would have taken the IRA in contravention of the kind of beneficiary clause now presented to us. Our decision is, in short, the result of the only text we were given. As authority, it extends only that far.
In denying the motion for rehearing, we add that much of it is in open defiance of the prohibition against argument in such a motion. Id. ("The motion shall not re-argue the merits of the court's order."). We had thought we made quite clear 3 years ago in Lawyers Title Ins. Corp. v. Reitzes, 631 So.2d 1100 (Fla 4th DCA 1993), that we will not suffer a flouting of this requirement. Motions for rehearing are strictly limited to calling our attentionwithout argumentto something we have obviously overlooked or misapprehended. The motion for rehearing is not a vehicle for counsel or the party to continue its attempts at advocacy. It should be demonstrative onlyi.e. merely point to the overlooked or misunderstood fact or circumstance. If we want additional argument, we know how to say so.
MOTION FOR REHEARING DENIED.
KLEIN, J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I, too, would deny the motion for rehearing in light of our holding on a similar motion for rehearing in Polyglycoat Corp. v. Hirsch Distributors, Inc., 442 So.2d 958, 960 (Fla. 4th DCA 1983), rev. dismissed, 451 So.2d 848 (Fla.1984), that matters may not be raised for the first time on such motion.
NOTES
[1] We do not agree that the decision in Goeke can be read so sweepingly. First, the issues there related to a guardianship, not to probate. The court determined that the designation of primary beneficiary in the IRA papers was not controlling and that the guardian did have the power with court approval to create or modify IRA accounts and that the creation or modification of such accounts was not a de facto creation of a will for the ward. In concluding that an IRA was not a trust for all purposes of Florida law, the court was merely stating the truism that the powers of the guardian under our law include the power of creation or modification. That is simply not the same thing as holding that an IRA is in no case a trust under Florida law.
[1] Indeed, PaineWebber now seeks leave to file an amicus curiae brief on the issue of rehearing. We note that PaineWebber filed a complaint in interpleader below, stating that it had no interest in the account and that the court should decide who takes it. During the pendency of this appeal, PaineWebber moved this court to relinquish jurisdiction so that the trial court could formally enter an order dismissing it from the action. Contending that our original opinion misread a document that neither we nor the trial court ever saw before, it now argues that it should be allowed to participate in the case from which it previously labored so hard to be dismissed, and that we should grant rehearing to correct the mistake we made in allowing the residuary beneficiary to take the IRA. We deny its motion.