711 So.2d 205 (1998)
Bryan LEWIS, Appellant,
v.
The STATE of Florida, Appellee.
No. 97-1373.
District Court of Appeal of Florida, Third District.
May 20, 1998.
Rehearing Denied June 24, 1998.
*206 Bennett H. Brummer, Public Defender and Robert Kalter, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Terri Leon-Benner, Assistant Attorney General, for appellee.
Before GERSTEN, SHEVIN and SORONDO, JJ.
SORONDO, Judge.
Bryan Lewis, defendant, appeals from a judgment of conviction and sentence for the crimes of armed robbery and armed carjacking. The state and the defendant agree that the following facts accurately describe the events which lead to the defendant's arrest and conviction:
On March 1, 1996, the victim in this case went to an ATM machine and withdrew approximately fifty dollars. As he returned to his car a man approached him, identified himself as a police officer and accused him of selling drugs. The man told him to lie on the ground and surrender his money. As the robber took the money, the victim saw a second man approach. The victim testified that the second man was holding something that appeared to be a gun. After the first man stole his money the two men stole his car and fled the scene.
Officer Santiago of the Metro Dade Police Department responded to the scene. The victim described the man that robbed him as between 20-25 years, approximately six feet tall and weighing approximately 200 pounds. He also described the car that was taken in the robbery. Officer Santiago immediately called a robbery detective and proceeded to look for the victim's vehicle. Santiago located the car and contacted the lead detective in the case. After processing the car and discovering no prints it was returned to the victim.
Three days after the robbery, the victim discovered a wallet under the front seat of his car. He opened the wallet and saw two photographs which resembled the individual who had robbed him. He contacted the police and told them that the individual in the photograph looked like the person that had robbed him. The police seized the wallet, arrested defendant and charged him with armed robbery and armed carjacking. The arresting officer testified that on the day defendant was arrested he was thirty-three years old, appeared to be approximately six feet three inches tall and weighed approximately 245 pounds.
At the trial, the victim testified that at a preliminary hearing he was unable to identify the defendant as being the individual who robbed him. He was also unable to make an in-court identification of the defendant at trial.
The jury found the defendant guilty of armed robbery with a weapon and armed *207 carjacking with a weapon. The court sentenced the defendant to fifteen years in state prison as to both counts and ordered the sentences to run concurrent.
The defendant's sole argument on appeal is that the trial judge erred in denying his motions for mistrial based on improper arguments made by the prosecutor during closing argument. He argues that these improper arguments denied him a fair trial. We disagree and affirm.
A review of the prosecutor's closing argument is extremely disturbing. During his summation the prosecutor, Harvey Hyman, improperly, and repeatedly, vouched for and bolstered the testimony of the victim as follows:
And, he was honest. He didn't exaggerate. He didn't lie. He didn't go in and say, "Yeah, that's the guy," because, you know, he's a nice kid. That's just the type of person he is. As a matter of fact, even when he was describing the gun, he said, "look, it was used in a manner that I believed it was a gun." But he's not going to come out and say, yeah, man, a hundred percent it's a gun, because that's the type of person he is.
Don't let that confuse you. Don't release him into society. Don't let him walk simply because [the victim] is super honest or super accurate.
(Emphasis added). The prosecutor later continued his improper vouching:
Don't reward him because Peter is a super honest guy and would not come in here and exaggerate and would not come in here and lie.
(Emphasis added). The law is clear that this type of vouching is completely improper. Cisneros v. State, 678 So.2d 888, 890 (Fla. 4th DCA 1996); Davis v. State, 663 So.2d 1379, 1380-81 (Fla. 4th DCA 1995); Clark v. State, 632 So.2d 88, 91 (Fla. 4th DCA 1994); Landry v. State, 620 So.2d 1099, 1101 (Fla. 4th DCA 1993).
Not satisfied with merely vouching for, and bolstering his witness' testimony, the prosecutor then attacked the defense:
MR. HYMAN: You know, I've prosecuted in this courthouse about four years, tried about sixty cases
MS. MARTIN: I'm going to object.
THE COURT: Sustained.
MR. HYMAN: You see different types of defenses. It is my job to present the evidence and it is their job to question the evidence. But you know, the manner with which they're questioning it, there's no other term for it, it's just lame.
This comment constituted an impermissible attack on defense counsel. See Riley v. State, 560 So.2d 279, 280 (Fla. 3d DCA 1990)(a prosecutor may not ridicule a defendant or his theory of defense); Rosso v. State, 505 So.2d 611, 612 (Fla. 3d DCA 1987); Briggs v. State, 455 So.2d 519, 520-21 (Fla. 1st DCA 1984). See also Alvarez v. State, 574 So.2d 1119 (Fla. 3d DCA 1991); Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982); Carter v. State, 356 So.2d 67 (Fla. 1st DCA 1978). The most disquieting aspect of this impropriety was the prosecutor's response to the defendant's motion for new trial subsequent to his conviction. The prosecutor explained his position as follows:
Now I got to admit I got a little bit on a rant and I sort of got a littleI stepped over the bound a little when I talked about sixty cases or when I called it lame, that's it, when I called their defense lame. The standard is whether or not Your Honor feels that that comment I made was so outrageous that it tainted the finding of guilt and I don't think that it was. Your honor is going to say that it's so outrageous that it shifted the trial. You have to remember, in my opinion, the actual evidence introduced in trial was fairly overwhelming in terms of guilt.
The prosecutor continued:
Now where it talks about my job to present the evidence and their job to question and then I argue about their manner of questioning, I agree, that was improper argument.
He then argued that State v. Benton, 662 So.2d 1364 (Fla. 3d DCA 1995), upon which the defendant relied for support of his motion for new trial, did not provide the defendant *208 the relief sought. The prosecutor advised the trial judge that he, himself, had represented the state at trial in Benton; that in that case he had said that it was defense counsel's "job to cross things up, to muddy the water," and that the Third District had reversed the trial court's granting of a new trial. It is unfortunate that the prosecutor misread Benton to allow this type of comment so long as the quantum of the state's evidence is, presumably in his own opinion, "overwhelming." Not only does this misguided reading of Benton ignore this Court's repeated characterization of this prosecutor's comments in that case as "improper" and "impermissible," id. at 1365, the trial judge's decision in that case was reversed due to the defendant's failure to properly preserve one issue for appellate review (another improper comment) and the conclusion that the single comment referred to above did not support the granting of a new trial. Id. Under Mr. Hyman's interpretation of Benton, where the state's evidence includes, for example, eye-witness testimony, a confession and fingerprints there could be virtually no comment sufficiently improper to necessitate a new trial. This would therefore open the door to any impermissible comment the state wished to make. This is not the law.
We remind counsel that prosecutors, like all lawyers, have ethical responsibilities. Most significant among these is a duty to seek justice. See Kirk v. State, 227 So.2d 40, 43 (Fla. 4th DCA 1969); see also Sandoval v. State, 689 So.2d 1258 (Fla. 3d DCA 1997); Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979). The attack upon defense counsel was improper in Benton, is improper in this case, and will continue to be improper in all future cases. Counsel is not free to pursue these types of arguments on the basis of his or her own assessment of the "overwhelming" nature of the evidence and the harmless nature of the impropriety.[1]
Turning now to an analysis of the impact of the improper comments in this case, in Lopez v. State, 555 So.2d 1298 (Fla. 3d DCA 1990), this Court held that in order for a prosecutor's comment to merit a new trial, the comment must be of such a nature as to: 1) deprive the appellant of a fair trial; 2) materially contribute to his conviction; 3) be so harmful or fundamentally tainted as to require a new trial; or 4) be so inflammatory that it might have influenced the jury to reach a more severe verdict than that which they would have reached otherwise. Id. at 1299. In this case the victim identified the defendant's photograph when he first saw it at the time he found the defendant's wallet. Although he later had difficulty with the identification, the defendant's wallet was found inside the car that was stolen from the victim. This is extremely significant circumstantial evidence of the defendant's guilt. The record is devoid of any explanation as to how the defendant's wallet, containing his identification and other things of personal value, got in the car. Defense counsel sought to explain the wallet's presence in the car by first explaining to the jury that the contents of the wallet were of great importance to the defendant but not to anyone else. Thus, she postulated, the defendant would not leave the wallet there because of its importance. She then argued:
The person responsible for this robbery, these weren't valuable to them. It didn't matter to them whether or not they left these behind. What mattered is they found somebody else to put this robbery on. Why would Mr. Lewis leave this behind? This is what he needs.
This was the only explanation offered to explain the presence of the defendant's wallet in the victim's car. As we observed above, there was absolutely no evidence to support this contention. Despite the impropriety of the prosecutor's comments, on these facts we do not believe the Lopez test for granting a new trial was satisfied.
Affirmed.
NOTES
[1] Lest the prosecutor in this case misread this opinion as he did Benton, we note that this is his second transgression in this area. Although the law in the area of improper prosecutorial comment is unlikely to change in the near future, a series of violations by the same individual, evincing a total disregard for the decisions of this Court, may ultimately require a referral to the Florida Bar for disciplinary measures.