743 So.2d 1105 (1999)
Johnny C. BARNES, Appellant,
v.
STATE of Florida, Appellee.
No. 98-0299.
District Court of Appeal of Florida, Fourth District.
February 17, 1999.
Opinion Denying Rehearing May 26, 1999.
*1106 Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
Robert A. Butterworth, Attorney General, Tallahassee, and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, for appellee. (On rehearing).
Michael J. Satz, State Attorney for the Seventeenth Judicial Circuit, and J. Scott Raft, Assistant State Attorney, Fort Lauderdale. (On rehearing).
FARMER, J.
At 2:00 in the morning on his way home after working a full shift as a nurse, an eyewitness saw two men illuminated by the low level glow of a nearby streetlight running away from a burning building. He saw them for no more than 15 seconds. The witness later identified a photograph of defendant as one of the men and, still later, identified him again from a lineup. Defendant's lawyer at the lineup objected to the array of persons chosen as unreasonably suggestive because none of them had the same general features as defendant. That lawyer, who had by then withdrawn as defendant's counsel, was called at trial as a defense witness to establish that the identification was tainted. Four other defense witnesses testified in support of an alibi, while still another witness testified to a conversation with a different person who admitted setting the fire.
During closing argument defense counsel argued that there was no objective evidence linking defendant to the crime and that a verdict of guilty would have to rest on the eyewitness identification. He argued that the identification was substantially compromised by the testimony of the first defense counsel. In rebuttal the state's prosecutor, Alberto Milian, responded by characterizing this testimony as "the mercenary actions of ... a hired gun, [e.s.] hired by the." At that point the following occurred:
"DEFENSE: Objection to that.
COURT: Sustained.
DEFENSE: Ask that it be stricken.
COURT: Ignore the last comment.
STATE: who was hired to go over there and defend this guy."
On appeal defendant argues that his conviction must be reversed because this highly improper argument of the prosecutor affected the jury in its deliberations in spite of a sustained objection and the curative instruction. We agree and reverse for a new trial.
The impropriety of a prosecutor disparaging or denigrating the person of defense counsel is now well established. See Briggs v. State, 455 So.2d 519 (Fla. 1st DCA 1984); Cochran v. State, 280 So.2d 42 (Fla. 1st DCA 1973); Simpson v. State, 352 So.2d 125 (Fla. 1st DCA 1977); Hufham v. State, 400 So.2d 133 (Fla. 5th DCA *1107 1981); Melton v. State, 402 So.2d 30 (Fla. 1st DCA 1981); Westley v. State, 416 So.2d 18 (Fla. 1st DCA 1982); McGee v. State, 435 So.2d 854 (Fla. 1st DCA 1983). This court has joined the many courts condemning the tactic. See Cochran v. State, 711 So.2d 1159 (Fla. 4th DCA 1998); Landry v. State, 620 So.2d 1099, 1102 (Fla. 4th DCA 1993); Ryan v. State, 457 So.2d 1084, 1089 (Fla. 4th DCA 1984); Thompson v. State, 318 So.2d 549 (Fla. 4th DCA 1975), cert. denied, 333 So.2d 465 (Fla.1976); see also Valdez v. State, 613 So.2d 916 (Fla. 4th DCA 1993). As we said in Ryan, "[r]esorting to personal attacks on the defense counsel is an improper trial tactic which can poison the minds of the jury." 457 So.2d at 1089(citation omitted).
The record clearly demonstrates the absence of objective evidencee.g., fingerprints, clothing, footprints, bodily fluids, etc.definitively tying defendant to the crime. Moreover it shows that the only other evidence incriminating defendant was circumstantial, that he was employed by a competitor of the business whose building was burnt by the arson. As we have already indicated, there was substantial evidence to create a reasonable doubt, consisting of an alibi and a hearsay admission of guilt by a third party. And if that were not enough, there were internal inconsistencies in the eyewitness's identification, primarily arising from differences between defendant's physical appearance and the details first given by the witness before any identification. It thus appears to us from a fastidious review of the record that the eyewitness identification was the heart of the state's case.
The testimony of original defense counsel therefore assumed great importance to the jury's resolution of the case. Hence, while we might have been able to conclude with some confidence in a case with substantial corroborating evidence of guilt that the error in closing argument was harmless, see e.g. Goddard v. State, 143 Fla. 28, 196 So. 596 (1940); and Lewis v. State, 711 So.2d 205 (Fla. 3d DCA 1998), here we are unable to do so. The state's case is barely enough to be prima facie, and it is countered by strong defense evidence that another person might be guilty.
Two additional problems arise from the trial judge's response to defendant's motion to strike the improper argument after the objection was sustainednamely, the trial judge's statement to "[i]gnore the last comment." As a curative instruction the judge's response is quite ambiguous. What precisely is the "last comment" to which the judge referred? Was it the words immediately preceding the judge's instruction, i.e., "[a]sk that it be stricken"? When a judge grants a motion to strike in this circumstance it is important that the fact of granting the motion be made unmistakably clear to the jury. It is also very important that the precise comment to be stricken be identified in a way that will leave no room for doubt about what the jury must ignore.
Equally troublesome is the vaporous nature of the "curative" instruction. As our supreme court said in Deas v. State, 119 Fla. 839, 161 So. 729, 731 (1935):
"When it is made to appear that a prosecuting officer has overstepped the bounds of that propriety and fairness which should characterize the conduct of a state's counsel in the prosecution of a criminal case, or where a prosecuting attorney's argument to the jury is undignified and intemperate, and contains aspersions, improper insinuations, and assertions of matters not in evidence, or consists of an appeal to prejudice or sympathy calculated to unduly influence a trial jury, the trial judge should not only sustain an objection at the time to such improper conduct when objection is offered, but should so affirmatively rebuke the offending prosecuting officer as to impress upon the jury the gross impropriety of being influenced by improper arguments." [emphasis supplied]
161 So. at 731; see also Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985) ("[W]e commend to trial judges the vigilant exercise *1108 of their responsibility to insure a fair trial. Where, as here, prosecutorial misconduct is properly raised on objection, the judge should sustain the objection, give any curative instruction that may be proper and admonish the prosecutor and call to his attention his professional duty and standards of behavior."). The "curative" instruction in this case hardly rises to these standards.
The seriousness of the impropriety committed by the prosecutor demanded a rebuke in the presence of the jury, coupled with a more forceful admonition that this kind of argument is highly improper and should not be considered in any way by the jury. Instead the court diluted its "cure" to the weakest possible, thereby implying that the violation was insubstantial and tenuous and the objection merely ritualistic. For a curative instruction conceivably to erase the palpable prejudice to the defendant in this situation, the court should have condemned the comment in the clearest and most unmistakable terms. In these circumstances it might even have been proper for the court to question the jurors to determine whether the effects of such improper closing argument could be set aside. The curative instruction in this case being so inadequate to its purpose, we are therefore unable to indulge the assumption that it had much effect.
Although defendant did not specifically move for a mistrial after the objection was sustained, he argues on appeal that the argument fundamentally affected the outcome of the trial. As the supreme court has stated: "for an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process." State v. Johnson, 616 So.2d 1, 3 (Fla.1993) (citations omitted). When the error concerns closing argument in a criminal case, to be fundamental it must be "such as utterly to destroy the defendant's most important right under our system, the right to the `essential fairness of [his] criminal trial.'" Cochran v. State, 711 So.2d 1159, 1163 (Fla. 4th DCA 1998) (citations omitted); see also Rhodes v. State, 547 So.2d 1201, 1206 (Fla.1989), cert. denied, 513 U.S. 1046, 115 S.Ct. 642, 130 L.Ed.2d 547 (1994); Knight v. State, 672 So.2d 590, 591 (Fla. 4th DCA 1996); Tuff v. State, 509 So.2d 953, 955-56 (Fla. 4th DCA 1987); Peterson v. State, 376 So.2d 1230, 1234 (Fla. 4th DCA 1979), cert. denied, 386 So.2d 642 (Fla.1980); and Thompson v. State, 318 So.2d 549, 551 (Fla. 4th DCA 1975). Fundamental error in a criminal case is error that "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1996) (quoting from State v. Delva, 575 So.2d 643, 644-45 (Fla. 1991), cert. denied, 522 U.S. 832, 118 S.Ct. 103, 139 L.Ed.2d 58 (1997)).
It is true that this prosecutorial excess is but a single comment, and that we are implicitly rejecting defendant's argument that other comments of this prosecutor are also improper enough to require a new trial. But as another appellate court in this state said in ordering a new trial under the identical circumstances:
"There is nothing in the record from which we can tell whether the offensive remark, objected to by counsel, recognized by the court as objectionable in sustaining the objection and by the attorney general in argument here, contributed to the conviction. As Mr. Justice Thornal said, in Pait v. State, 112 So.2d 380 at 385 (Fla.1959): `We think that in a case of this kind the only safe rule appears to be that unless this court can determine from the record that the conduct or improper remarks of the prosecutor did not prejudice the accused the judgment must be reversed.' That was a capital case, and this is not, but the accused has a fundamental right to a fair trial free from argument condemned, according to Mr. Justice Terrell, `... so many times ... that the law *1109 against it would seem to be so commonplace that any layman would be familiar with and observe it.'"
Chavez v. State, 215 So.2d 750, 750-51 (Fla. 2d DCA 1968) (citations omitted); see also Stewart v. State, 51 So.2d 494 (Fla. 1951). Because of the closeness of the evidence and the fact that the improper argument directly concerned the principal evidence of guilt, we conclude that the prosecutorial misconduct goes to the very core of the conviction, that it operated to deny defendant a fair trial and is the equivalent of a denial of due process. Defendant has therefore carried his burden to make prejudicial and fundamental error clearly appear. See § 924.051, Fla. Stat. (1997).
With the renewed attention of the bench and bar to the subject of attorney professionalism, we feel constrained to observe that this is not the first case in which the conduct of this particular prosecutor has required a new trial. See Cochran v. State, 711 So.2d 1159 (Fla. 4th DCA 1998); Klepak v. State, 622 So.2d 19 (Fla. 4th DCA 1993); and Landry v. State, 620 So.2d 1099 (Fla. 4th DCA 1993). It is evident from these cases that he has persisted in this improper conduct for more than five years in spite of repeated disapproval of it by our court. Apparently this prosecutor has not learned from our previous comments that his improprieties have brought repeated discredit to the office of the State Attorney in the Seventeenth Judicial Circuit by his failure to comply with the canons of advocacy.
In Bertolotti v. State, 476 So.2d 130 (Fla. 1985), the court said of another prosecutor who persisted in such improper conduct that:
"This Court considers this sort of prosecutorial misconduct, in the face of repeated admonitions against such overreaching, to be grounds for appropriate disciplinary proceedings. It ill becomes those who represent the state in the application of its lawful penalties to themselves ignore the precepts of their profession and their office. Nor may we encourage them to believe that so long as their misconduct can be characterized as `harmless error,' it will be without repercussion. However, it is appropriate that individual professional misconduct not be punished at the citizens' expense, by reversal and mistrial, but at the attorney's expense, by professional sanction."
476 So.2d at 133-134 [e.o.]. More recently in Izquierdo v. State, 724 So.2d 124, 23 Fla. L. Weekly D2643 (Fla. 3d DCA 1998), Chief Judge Schwartz wrote in an identical context that:
"This is the third time we have been forced to deal with his indulgence in what is often euphemistically called `overzealous advocacy,' but is really just unprofessional and unethical behavior. See Lewis v. State, 711 So.2d 205 (Fla. 3d DCA 1998); State v. Benton, 662 So.2d 1364 (Fla. 3d DCA 1995). We therefore now fulfill the promise of Lewis, 711 So.2d at 208 n. 1, and refer him to the Florida Bar."
With the fourth rebuke of prosecutor Milian by this court, we hope that the disciplinary organs of The Florida Bar will finally bring their compelling powers to bear on this lawyer who either refuses or is unable to limit his trial tactics to that which are ethical and proper.
REVERSED FOR NEW TRIAL.
GUNTHER and TAYLOR, JJ., concur.

ON MOTION FOR REHEARING/REHEARING EN BANC
FARMER, J.
The State of Florida has timely filed a motion for rehearing calling our attention, among other things, to an erroneous attribution of prosecutorial misconduct in one of the cases cited in our original opinion. The motion is not signed by the Assistant Attorney General, Don M. Rogers, who has until now represented the State in this case. On the contrary, the motion for *1110 rehearing was signed first by Assistant State Attorney J. Scott Raft and next by a different Assistant Attorney General, namely Celia A. Terenzio.[1] Defendant's counsel conceded in a prompt response to the motion that the citation to Knight v. State, 672 So.2d 590 (Fla. 4th DCA 1996), was in error in attributing any misconduct to prosecutor Milian. Accordingly, and without reaching any decision on the merits of the motion for rehearing, we determined that we would immediately issue a corrected opinion deleting the reference to Knight, no matter what we determined on the merits of the motion. We thereupon sent a copy of the corrected opinion to West Publishing.
Shortly afterwards, we received a copy of a letter from Mr. Raft directed to West Publishing. The letter requested that West "withhold alteration of any portion of the opinion" until this court had finally disposed of the case. That was soon followed by the filing in our court of a document styled as "Appellee's Supplemental Motion for Rehearing/Rehearing En Banc" (supplemental motion). This supplemental motion was not signed by anyone from the Attorney General's office. Instead it was signed only by Mr. Raft. We will not here detail the content of this supplemental motion except to say that it specifically objects in great detail to the issuance of our corrected opinion and prays that any changes to the original opinion be made only, if at all, as part of our disposition of the pending motion for rehearing.
We thereupon issued an order to the Attorney General and the assistant state attorney to show cause why the supplemental motion should not be stricken as unauthorized. We called respondents' attention therein to section 16.01(4) ("The Attorney General ... [s]hall appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which the state may be a party, or in anywise interested, in the Supreme Court and district courts of appeal of this state.") and section 27.02 ("The state attorney shall appear in the circuit and county courts within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal, in which the state is a party, except as provided in chapters 39, 984, and 985."). §§ 16.01(4) and 27.02, Fla. Stat. (1998). Our order also allowed the defendant to reply to any responses from the Attorney General and State Attorney.
The Attorney General responded through his assistant, Ms. Terenzio. His response stated that the supplemental motion "was filed without any prior notice to this Office." If the Attorney General had no prior notice from or consultation with Assistant State Attorney Raft regarding the supplemental motion, we take that to mean that the Attorney General's office did not specifically authorize the supplemental motion. It is also conspicuous that the Attorney General's response does not adopt any part of the supplemental motion on behalf of his office.
Mr. Raft also timely responded to the order, acknowledging sections 16.01(4) and 27.02 but arguing that, in spite of their clear import, a state attorney has a common law right unaffected by these statutes to represent the State of Florida in criminal appeals. The response cites a number of decisions in which a state attorney appeared in this court on behalf of the state,[2] *1111 as well as similar cases from the supreme court and other district courts of appeal.[3]
Defendant filed a reply to Mr. Raft's response to our show cause order. Defendant's reply points out that Assistant Attorney General Rogers is counsel of record for the state in this case; that Mr. Rogers prepared and signed the answer brief; that Mr. Rogers argued the case at oral argument; and that no one from the state attorney's office has been previously involved in this case on behalf of the state all thereby bringing to our attention that there has been no motion to substitute anyone for Mr. Rogers. Defendant further states that it was only after the issuance of our opinion in this case that the State Attorney, "apparently unhappy with the performance of the Attorney General's office," filed the motion for rehearing. Defendant further contends that the State Attorney has a "recent practice" of intervening in cases when a decision of this court is "adverse to that office." Defendant closes his reply with a prayer that we strike the supplemental motion as unauthorized.
In none of the cases cited by Mr. Raft has any Florida appellate court purported to decide that a state attorney has a common law right to represent the state in a higher court. Rather, the written opinions in the cases cited show merely that a state attorney represented one of the parties. We have no way of knowing from these opinions whether the Attorney General specifically approved of the state attorney's pro hac vice representation of the state in the cases cited or, for that matter, whether the court or another party ever objected to it.
We can understand why the Attorney General might prefer to appoint the State Attorney directly involved in a prosecution as a special assistant attorney general for that occasion to represent the state. That would be especially true where, say, one of the parties seeks extraordinary review by common law certiorari of a pretrial order that admits or excludes evidence in a criminal case. Indeed the representation of the state in appellate court extraordinary review of orders entered before judgment in ongoing criminal prosecutions in the circuit court strikes us as probably not inconsistent with a State Attorney's general duties described in section 27.02.
At the same time, section 27.05 requires only that the State Attorney "shall assist the Attorney General in the preparation and presentation of all appeals to the Supreme Court, from the circuit court of their respective circuits, of all cases, civil or criminal, in which the state is a party." [e.s.] By its plain terms, section 27.05 pertains only to the supreme court and even then it merely requires the local prosecuting official to assist the Attorney General, not to replace that office. Notably, section 27.02 is confined to only the trial courts within the State Attorney's jurisdiction.
The mere fact that the Attorney General may have appointed an assistant *1112 state attorney as an assistant attorney general for that case, or that he merely acquiesced in the assistant state attorney's appearance without the Attorney General's own participation, does not create any common law right in an assistant state attorney to represent the state in an appellate court without the express authorization of the Attorney General. While Mr. Raft correctly notes that section 2.01 adopts the common law in Florida, he conspicuously fails to add that the same statute also contains a proviso that the common law so adopted is "not inconsistent" with "the acts of the Legislature of this state." § 2.01, Fla. Stat. (1997). Mr. Raft's common law argument is plainly inconsistent with section 16.01(4) and section 27.02. Section 16.01 unambiguously authorizes only the Attorney General to represent the state in the appellate courts of this state, and section 27.02 plainly limits a State Attorney's authority to represent the state to criminal prosecutions in the county and circuit courts within the judicial circuit in which the State Attorney holds office.
In this case, which is an appeal of a final criminal conviction and sentence, the Attorney General apparently did approve the participation of Mr. Raft to assist his office in the preparation of the motion for rehearing. But the response of the Attorney General to our show cause order also shows that he had no prior notice of the supplemental motion and does not suggest either expressly or impliedly that his office approved it. Therefore, because the supplemental motion for rehearing prepared and filed solely by Mr. Raft was not approved by the Attorney General, we deem it unauthorized and hereby grant defendant's motion to strike it.[4]
Before we pass on from the subject of the supplemental motion, however, we feel compelled to comment on something raised by defendant's reply. Defendant made the point that the state had been represented throughout this case by Mr. Rogers and that after our opinion was released Mr. Rogers was apparently no longer representing the state. That observation caused us to recall that during oral argument, in response to questions from the panel on this case, Mr. Rogers candidly conceded that (as argued by defendant in his brief) Assistant State Attorney Milian had been the subject of previous holdings of this court involving prosecutorial misconduct. With his admirable professional candor, Mr. Rogers had stated at oral argument that he would make no attempt to justify the conduct of assistant state attorney Milian in the cases cited by defendant in his initial brief.
We think it very important to reaffirm that it is entirely appropriate, even preferable, for an appellee's lawyer to accept factual assertions in the statement of facts in the initial brief and to concede facts or law at oral argument. Good lawyers do not waste time in petty quarrels over tertiary details, so long as the ultimate facts and law are accurately stated. In this regard, Mr. Rogers is one of the better lawyers frequently appearing in our court. His briefs for the state usually concentrate on the important matters for our consideration and do not have us counting dancing angels on small promontories. We recognize in his advocacy a lawyer on whom we can usually rely to get it right and do it ethically. We commend *1113 Mr. Rogers for his professionalism in this case.
We therefore deem it equally important to emphasize that the lawyers from the Attorney General's office who argue in this or any other appellate court in this state simply must have the authority in the heat of oral argument to concede weaknesses in the state's case. To deprive them of that authority is to severely weaken their effectiveness as advocates. Moreover the failure of a lawyer to acknowledge clearly contrary facts or law is decidedly unethical and unprofessional.
The legal duty to prosecute crime does not require an unbending refusal to recognize the obvious. Even when it loses a case, the State of Florida triumphs when justice is rightly done. Thus it should not make a State Attorney who initiates a particular criminal prosecution unhappy to learn that the Attorney General has, through one of his assistants in the exercise of professional judgment, conceded some matter during an appeal in order that justice be done. See Oglesby v. State, 156 Fla. 481, 23 So.2d 558 (1945) (state attorney has duty to assure defendant fair trial because state attorney is semi-judicial officer).
Turning to the original motion for rehearing, we first note that it is constructed much like a brief, even to the extent of having a "summary of argument" near the beginning. Then, in addition to presenting a summary of factual errors, the motion proceeds to engage in extensive argument challenging the correctness of our decision in this case. The motion seems to have as its primary purpose an intent to demonstrate a party's profound disagreement with the merits of our decision.
At this late date, it should not require another opinion restating that this is not the function of a motion for rehearing.
"Certainly it is not the function of a petition for rehearing to furnish a medium through which counsel may advise the court that they disagree with its conclusion, to reargue matters already discussed in briefs and oral argument and necessarily considered by the court, or to request the court to change its mind as to a matter which has already received the careful attention of the judges, or to further delay the termination of litigation."
State v. Green, 105 So.2d 817, 818-819 (Fla. 1st DCA 1958), cert. discharged, 112 So.2d 571 (Fla.1959); see also Fla. R.App.P. 9.330(a); Jacobs v. Wainwright, 450 So.2d 200, 201 (Fla.), cert. denied, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984) ("A motion for rehearing shall not reargue the merits of the Court's order."); Lawyers Title Ins. Corp. v. Reitzes, 631 So.2d 1100 (Fla. 4th DCA 1993); Seslow v. Seslow, 625 So.2d 1248 (Fla. 4th DCA 1993); Whipple v. State, 431 So.2d 1011, 1013 (Fla. 2nd DCA 1983).
More recently, in Goter v. Brown, 682 So.2d 155 (Fla. 4th DCA 1996), review denied, 690 So.2d 1299 (Fla.1997), we said:
"We had thought we made quite clear 3 years ago ... that we will not suffer a flouting of [the requirement that motions for rehearing shall abstain from argument]. Motions for rehearing are strictly limited to calling our attention without argumentto something we have obviously overlooked or misapprehended. The motion for rehearing is not a vehicle for counsel or the party to continue its attempts at advocacy. It should be demonstrative onlyi.e. merely point to the overlooked or misunderstood fact or circumstance. If we want additional argument, we know how to say so." [e.o.]
682 So.2d at 158. The motion in question is a model of the kind covered by our reproach in Goter.
Although the state's motion for rehearing is thus improper and would normally elicit no comment from us other than to deny it, we nevertheless address the *1114 state's contentions of "errors and additional facts." It is important, however, to remember the context of the factual assertions in our original opinion. Ordinarily we would begin and end review with the observation that we have accepted all contested facts in favor of the prevailing party. But in this instance our account of the factual background was part of an analysis whether the improper argument of the prosecutor was prejudicial.[5] Thus our opinion sought to present the evidence in favor of the losing party in order to assess whether the argument could be deemed harmless.
The motion first quarrels with our characterization of the street lighting as "low level." We note that this was the term used by defendant in the statement of facts in the initial brief, and the answer brief "accepts Appellant's statement of the case and facts," subject to an addition not relevant on this point.[6] Thus the briefs are alone sufficient to support our statement, for there was no express rejection of defendant's characterization as "low level" in describing the lighting. Unless a party points out a disagreement with a factual statement, we are entitled to accept the statement of facts in the brief as accurately portraying the necessary factual background for the legal issues. This is, of course, especially so when the party has accepted the statement of facts.
Next the state challenges our statement of 15 seconds as the duration of the time in which the eyewitness saw the perpetrator. Yet as conceded by the state in its answer brief the witness specifically testified that he saw the face of the man for no longer than 15 seconds.
The state next asserts that we were incorrect in saying that the eyewitness first identified defendant from a photo array and only after that in a live line-up. Here again, the initial brief, which was accepted by the state, asserts that the witness "selected [defendant's] photograph from a photo-spread...." The brief then says that "[f]ollowing the photo-spread identification and prior to trial [the witness] selected [defendant] from a live line-up *1115 ...." [e.s.] We necessarily add that whether the witness picked the photo or the live person first in the identification sequence is of no importance to our decision that the prosecutorial misconduct was prejudicial.
The fourth factual assertion challenged by the state is in reference to whether the lawyer-witness called by the defense actually objected to the line-up as unreasonably suggestive. Defendant points out in his response to the motion for rehearing that Mr. Kulik "unequivocally" testified that he objected to the array of persons chosen. The transcript shows that Mr. Kulik testified as follows:
"I told him basically that he [defendant] was the only person with a full beard and that kind of hair. I didn't think it was a good lineup. I thought it might be suggestive and I thought it might be a misidentification, and he proceeded anyway."
The fact that there was contrary evidence by police officers is beside the point of our reference to Mr. Kulik's testimony, which was presented, again, as part of harmless error analysis.
In the final contentions of factual error, the motion quarrels with whether the evidence of the defense alibi witnesses was sufficient to establish an alibi (we never said it was, merely that there was alibi evidence); that we were incorrect in saying there were internal inconsistencies in the witness's identification (there were, but we did not suggest that any inconsistencies rendered the identification legally unacceptable, merely that they existed); and that prosecutor Milian has not been repeatedly rebuked (the reader can read the cases cited in our corrected opinion). We stress once again that these facts were concerned with harmless error.
In the end we conclude that the state's motion for rehearing misses the point of our opinion. None of the state's contentions, even if they had turned out to be well taken, are sufficient to cause any judge on this panel to believe that the result of our decision on the merits should be changed.
REHEARING DENIED.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] The style and format of the motion suggest that it was not prepared by the Attorney General's office.
[2] See State v. Johnston, No. 98-3402 (pending); State v. Scibana, 726 So.2d 793, 24 Fla. L. Weekly D127 (Fla. 4th DCA 1999); State v. Sclafani, 704 So.2d 128 (Fla. 4th DCA 1997); Sullivan v. State, 674 So.2d 214 (Fla. 4th DCA 1996); State v. Gullett, 652 So.2d 1265 (Fla. 4th DCA 1995); State v. Tremblay, 642 So.2d 64 (Fla. 4th DCA 1994); Wall v. State, 615 So.2d 822 (Fla. 4th DCA 1993); State v. Zenobia, 614 So.2d 1139 (Fla. 4th DCA 1993); Turner v. State, 611 So.2d 12 (Fla. 4th DCA 1992); State v. Diandrea, 602 So.2d 1322 (Fla. 4th DCA 1992); State v. Allred, 602 So.2d 1326 (Fla. 4th DCA 1992); and Dortch v. State, 588 So.2d 342 (Fla. 4th DCA 1991). We note that Sclafani, Zenobia, Diandrea, and Allred involve extraordinary review in ongoing prosecutions. Tremblay and Wall were clearly final appeals, as were Sullivan, Gullett and Dortch which involve final orders on motions seeking postconviction relief. Turner was to review an order after sentencing to appoint special appellate counsel.
[3] See State v. Ashley, 701 So.2d 338 (Fla. 1997); Unruh v. State, 669 So.2d 242 (Fla. 1996); State v. Luster, 596 So.2d 454 (Fla. 1992); State v. Donaldson, 579 So.2d 728 (Fla.1991); State v. Crenshaw, 548 So.2d 223 (Fla.1989); and Craft v. State, 517 So.2d 691 (Fla.1988). Ashley involved an ongoing prosecution. See also Allen v. State, 703 So.2d 1162 (Fla. 2d DCA 1997); State v. Taplis, 684 So.2d 214 (Fla. 5th DCA 1996); State v. Ashley, 670 So.2d 1087 (Fla. 2d DCA 1996); State v. Guthrie, 666 So.2d 562 (Fla. 2d DCA 1995); State v. Poole, 665 So.2d 1065 (Fla. 5th DCA 1995); State v. Campbell, 664 So.2d 1085 (Fla. 5th DCA 1995); State v. Ingleton, 653 So.2d 443 (Fla. 5th DCA 1995); State v. Myrick, 636 So.2d 785 (Fla. 1st DCA 1994); and State v. Smith, 600 So.2d 574 (Fla. 1st DCA 1992). Taplis, Ashley, Guthrie, Poole, Campbell, Ingleton, Myrick and Smith all involved extraordinary review of pretrial orders in ongoing prosecutions. Only Allen was a final appeal.
[4] Although we have struck the supplemental motion for rehearing, we do wish to stress that our opinions are subject to correction by us at any time before we have decided pending motions for rehearing. We frequently correct an opinion promptly when someone calls our attention to a factual, grammatical, orthographic or other kind of error, inaccuracy or omission not necessarily affecting any substantive decision on our part. The lawyers involved need draw no dire conclusions from our so doing except that we desire to remove such errors from an opinion no matter what else we might do. And, we trust, we need not bother to explain why it is not for attorneys representing the parties in a case in our court to attempt to tamper with the publication of our decisions or to attempt to countermand our directions to West Publishing.
[5] Since our original decision the supreme court has released its opinion in Ruiz v. State, 743 So.2d 1 (Fla.1999). Like this case, Ruiz involved a reversal based on prosecutorial misconduct. Many of the instances of misconduct by the prosecutor in Ruiz were not preserved by a timely objection. Yet the supreme court also relied on the unpreserved acts for its reversal, explaining:

"The State argues that because defense counsel failed to object to several of the prosecutor's ... statements he is barred from raising this issue on appeal. We disagree. When the properly preserved comments are combined with additional acts of prosecutorial overreaching set forth below, we find that the integrity of the judicial process has been compromised and the resulting convictions and sentences irreparably tainted." [emphasis supplied.]
743 So.2d at 7.
In our original opinion we intentionally omitted reciting several instances of unpreserved prosecutorial misconduct in this case, among them the following:
(1) Prosecutor Milian told the jury that the police and prosecutor have "identified" defendant as the perpetrator of the crime;
(2) Prosecutor Milian described defendant as a "trusted lieutenant" in a criminal enterprise;
(3) Prosecutor Milian told jurors that the prosecutor makes absolutely sure his eyewitnesses can identify the perpetrator of the charged crime before calling that witness to the stand;
(4) Prosecutor Milian advised the jury that "if anything in this case, enough people have not been arrested;" and
(5) Prosecutor Milian admonished the jurors that an acquittal would "stick in [his] side like a thorn."
These instances of prosecutorial misconduct are indistinguishable from the misconduct condemned by the supreme court in Ruiz and certainly supporteven more soour original decision to reverse.
[6] The state added that the eyewitness "got a good look at appellant's face for about 15 seconds ...," and that the eyewitness actually identified defendant on three different occasions: once from a photo array shortly after the crime, once from a live line-up, and last during the trial. The answer brief also reminded us that defendant presented an alibi defense.