10 So.3d 218 (2009)
Ronald WILLIAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D07-1542.
District Court of Appeal of Florida, Third District.
April 22, 2009.
Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Natalia Costea, Assistant Attorney General, for appellee.
Before RAMIREZ, CORTIÑAS, and ROTHENBERG, JJ.
ROTHENBERG, J.
The defendant, Ronald Williams, challenges his convictions and sentences for attempted first degree murder and attempted second degree murder. We affirm.
The issue in this case is whether the trial court abused its discretion by overruling defense counsel's objections to statements made during the State's closing argument and denying the defendant's motions for mistrial following these statements. While we find that the statements were improper, we affirm the defendant's convictions because, based on the overwhelming evidence of guilt, the error was harmless. See Goodwin v. State, 751 So.2d 537, 547 (Fla.1999) (holding that a motion for mistrial "should be granted only when it is necessary to ensure that the defendant receives a fair trial") (quoting Cole v. State, 701 So.2d 845, 853 (Fla. 1997)); State v. DiGuilio, 491 So.2d 1129, *219 1135 (Fla.1986) ("The harmless error test... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.").
The defendant's defense at trial was mistaken identification. The evidence at trial was that the victim of the attempted first degree murder ("victim # 1") knew the defendant. Victim # 1 testified that the defendant approached him (in broad daylight at a flea market), and at a distance of approximately two feet, the defendant pointed a firearm at him, pulled the trigger, but the firearm jammed. When the defendant began to back away, victim # 1 turned to leave, but when he heard "Cynthia" ("the eyewitness") screaming, he turned and saw the defendant behind him and he began to run, with the defendant chasing him and shooting at him. Victim # 1 was ultimately shot in the back. Victim # 1 positively identified the defendant as the shooter.
The eyewitness also positively identified the defendant as the shooter, and she too knew the defendant, with whom she had grown up. The eyewitness testified that she saw the defendant point a firearm at victim # 1, pull the trigger, and when the firearm jammed, she observed the defendant retreat, return, and shoot at the defendant while chasing him. She testified that the defendant shot at victim # 1 at least three or four times.
Victim #2 is a fourteen-year-old girl, who was also shot during the incident. She described the man she saw with the gun, and subsequently positively identified the defendant both from photographs and at trial.
Additionally, the result of the gunshot residue test performed on the defendant, tested positive, and while the defendant claimed that victim # 1 had a motive to lie, there was no evidence indicating that either the eyewitness, who grew up with the defendant, or victim # 2 had a motive to lie.
Although we conclude that there is no reasonable possibility that the complained-of errors contributed to the defendant's convictions or denied the defendant his right to a fair trial, we again find it necessary to admonish the prosecutor and remind all lawyers who practice in this state, that closing arguments must be confined to the evidence in the record or which can reasonably be inferred from the evidence. See Wilson v. State, 798 So.2d 836 (Fla. 3d DCA 2001). Additionally, closing arguments "must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law." Jackson v. State, 832 So.2d 773, 778 (Fla. 4th DCA 2002) (quoting Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985)). As Judge Blue so aptly stated: "Trial attorneys must avoid improper argument if the system is to work properly. If attorneys do not recognize improper argument, they should not be in a courtroom. If trial attorneys recognize improper argument and persist in its use, they should not be members of The Florida Bar." Luce v. State, 642 So.2d 4, 4 (Fla. 2d DCA 1994) (Blue, J., concurring specially).
Affirmed.
RAMIREZ, Judge (concurring).
Respectfully, I do not believe the majority opinion does justice to what the prosecution did in this case. In my view, the prosecution's tactics were outrageous and unfortunately were compounded by the trial *220 court overruling defense counsel's objections.
The majority opinion sets out the evidence in this case. After reading the transcript, it is difficult to discern what the defense was in this case. The shooting ostensibly was related to an apparent love triangle. Norton Altidor, referred to as victim # 1 in the majority opinion, was a twelve-time convicted felon. He testified that on the day of the shooting he went to the flea market and saw Ronald Williams with his girlfriend. Altidor admitted that he used to have a relationship with Williams' girlfriend and that he was arrested once for beating her so badly she had to be hospitalized. Altidor claimed that Williams approached him with a gun and when he squeezed the trigger the gun jammed. Williams walked off and several seconds later, according to Altidor, Williams once again approached him with a gun. Altidor claimed that he attempted to run away and as he was running, Williams shot him in the back.
Cynthia, who worked at the flea market and was an admitted drug user, claimed that she was friends with both Williams and Altidor. She corroborated Altidor's testimony that defendant was the person who fired the shots at the flea market that day. Likewise, victim # 2 identified Williams from a photograph. The gunshot residue test results were positive. Given all this evidence, one would think the prosecutor could stick to the facts. But that is not what happened.
Despite the fact that Williams did not testify and no State witness offered any testimony concerning any statement made by the defendant, the State attributed the following statement to defendant during his closing argument:
Now this defendant was with [his girlfriend]. He wanted to take the law into his own hands, because Mr. Altidor knew that he was wanted for questioning on that case, on the battery case with [the girlfriend]. So what this defendant does is this, he tries to man up. He tells [his girlfriend]:
I'm going to be a bigger man. I don't want you going back towith Norton Altidor. I'm going to take care of this for everybody.
Defense counsel immediately objected and moved for a mistrial. Defense counsel argued that the prosecutor had just told the jury that defendant had made an incriminating statement that was not introduced into evidence. Inexplicably, the trial judge overruled defense counsel's objection and denied his motion for mistrial.
Encouraged by the court's ruling, the prosecutor compounded the error by arguing:
This is street justice. It is not uncommon in that area. There were many people that were at the flea market that day. But they knew this defendant. They also know Norton. They know that they are not nice guys. They didn't want to come forward. You only heard from
The defense again objected, and the trial judge again overruled defense counsel's objection.
After deliberations, the jury found Williams guilty of attempted first degree murder as to count one and attempted second degree murder as to count two, which was a lesser included offense. The court sentenced Williams to forty years in prison with a twenty-five year minimum-mandatory sentence.
The Florida Supreme Court in Ruiz v. State, 743 So.2d 1 (Fla.1999), recognized that a criminal trial is a neutral arena where both sides place evidence for the jury's consideration. The role of counsel in closing argument is to assist the jury in *221 analyzing that evidence, not to obscure the jury's view with personal opinion, emotion, and non-record evidence. Id. at 4. The Florida Supreme Court stated:
The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. That same power and force allow him, with a minimum of words, to impress on the jury that the government's vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.
Id.
Therefore, prosecutors must confine their closing arguments to evidence in the record and must not make comments which could not be reasonably inferred from that evidence. Rivero v. State, 752 So.2d 1244 (Fla. 3d DCA 2000); Williamson v. State, 459 So.2d 1125 (Fla. 3d DCA 1984). An argument suggesting to the jury that there is evidence harmful to the accused that the jury did not hear is highly improper. See Ford v. State, 702 So.2d 279 (Fla. 4th DCA 1997); Stewart v. State, 622 So.2d 51, 56 (Fla. 5th DCA 1993) (concluding that defendant was entitled to new trial where the prosecutor's statement clearly suggested that the State had additional evidence and proof of the defendant's guilt that it had not provided to the jury, and the curative instruction did little to dispel the suggestion); Landry v. State, 620 So.2d 1099, 1102 (Fla. 4th DCA 1993); Thompson v. State, 318 So.2d 549, 551 (Fla. 4th DCA 1975).
In this case, despite the fact that Williams did not testify and no State witness offered any testimony concerning any statement made by Williams, the State contrived a dialogue between Williams and his girlfriendthat he wanted to take the law into his own hands, that he knew Altidor was wanted for questioning, that he was going to "man up." He then tells his girlfriend, "I'm going to be a bigger man. I don't want you going back to with Norton Altidor. I'm going to take care of this for everybody." Admission of this would have been beneficial for the State ... had it happened. But as far as the record is concerned, it only occurred in the prosecutor's imagination. By overruling defense counsel's objection, the trial judge in essence told the jury that they could consider the fact that Williams had made an incriminating statement. No such statement had been introduced at trial. Thus, the jury could surmise that the prosecution must have additional evidence that had not been presented at trial.
The problem was compounded when the prosecutor proceeded to argue that in the area where this crime took place, witnesses were afraid to come forward. There were other witnesses who could have testified but they knew Williams and the victim were not nice guys and therefore, they were afraid to come forward.
There was no evidence that Williams had threatened any witnesses, that any of the witnesses knew him, or that he was not a nice guy. This, too, the trial judge overruled without explanation, thus implying that the prosecutor may have spoken to other witnesses who had incriminating evidence against William but refused to testify because they were afraid of the defendant who was not a nice guy.
It is axiomatic that lawyers can never argue facts not in evidence. It is particularly abhorrent where a prosecutor, representing the people of the State of Florida, resorts to such tactics. This is particularly true where a prosecutor suggests that a witness did not appear due to fear of the defendant, where there is no evidentiary support for the proposition. See Johnson *222 v. State, 747 So.2d 436, 439 (Fla. 4th DCA 1999).
In Tindal v. State, 803 So.2d 806 (Fla. 4th DCA 2001), the prosecutor argued that there were other witnesses in the case who failed to appear due to the fact that they were scared. Id. at 809. In reversing the defendant's conviction, the Fourth District recognized the following:
First, because the prosecutor is an agent of the State, such comments imply that the prosecutor has unique knowledge that has not been presented to the jury. Second, the comment was "highly irregular, impermissible, and prejudicial" because it improperly implied that appellant engaged in witness tampering or suborning perjury, both criminal offenses. Thus, the prosecutor's comments went beyond a fair reply.
Id. at 810 (citations omitted). Furthermore, there was no evidence introduced at trial that defendant was not a nice guy. Williams did not testify and, therefore, there was no evidence introduced concerning his criminal record. The prosecutor's statement that the uncalled witnesses knew defendant was not a nice guy left the jury with the impression that defendant had a criminal past which was clearly inadmissible in this case.
The majority frames the issue as to whether the trial court abused its discretion in overruling defense counsel's objections and denying the motion for mistrial. Respectfully, the trial court has no discretion to allow a prosecutor to make up a dialogue between Williams and his girlfriend. A trial court has no discretion to allow the prosecutor to attack the defendant as "not a nice guy" where his character is not in evidence. A trial court has no discretion to allow the prosecutor to suggest that other witnesses would have come forward except they were afraid of the defendant.
The majority then acknowledges that the statements were improper. Indeed. Had the trial court sustained the objection and given a curative instruction, I readily would agree to affirm. But the jury in this case was left with the impression that Williams had made statements about his motives where in fact he was denying that he was the perpetrator. The jury also was told that Williams was not a nice guy who had threatened other potential witnesses into not testifying.
The only viable argument in this case is that the errors were harmless. I must reluctantly agree. Inexplicably, the prosecutor in this case felt obligated to push the envelope by inventing dialogue, attacking Williams' character and blaming the lack of witnesses on fear of Williams. The prosecutor must have felt that the admissible evidence in this case was insufficient to convict, otherwise he would not have injected such obvious error into the proceedings
Over the years, it has been my unfortunate experience to see a long procession of assistant State attorneys repeatedly violate clear precedent in their zeal to convict. It is either that these prosecutors are untrained, that they do not trust juries, or that they feel that their behavior has no consequences. They do not even have to face an appellate panel's questions during oral argument. If nothing else, I will henceforth publish their names so that their questionable tactics appear in the permanent record of the Southern Reporter.
I reluctantly join today's decision, mindful that I may be promoting the notion that winning is more important than giving defendants a fair trial. But given the *223 overwhelming evidence of Williams' guilt, I have to agree that under State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986), "there is no reasonable possibility that the error contributed to the conviction." I thus concur in the result.